(107 App. Div. 210.)

GALLOWAY v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department.  July 27, 1905.)

**1. CARRIERS—CONTRACTS LIMITING COMMON-LAW LIABILITY—CONSTRUCTION.**

A contract of shipment, intended to limit a common carrier's common-law liability, should be construed strictly against the carrier.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 697.]

**2. SAME—SHIPMENT OF CATTLE—NEGLIGENCE—DELAY IN TRANSPORTATION—CONSTRUCTION OF CONTRACT.**

A shipping contract provided that the carrier should not be liable for "any injury sustained by said live stock," occasioned "by any or either of the following causes, to wit, overloading, crowding, * * * or for delay caused by stress of weather * * * or from causes beyond their control," and that, "in the event of any unusual delay or detention * * * caused by the negligence of said carrier * * * or otherwise," the shipper agreed to accept, as compensation for damages sustained, the amount expended by him in the purchase of food and water for the said stock while detained.  *Held*, that the carrier was not exempted from liability for neglect, resulting in injury to the cattle, and, where defendant railroad unjustifiably delayed the car containing plaintiff's cattle, confining them without unloading during the transportation, whereby, on reaching their destination, one of them died, and all the others were injured, it was liable for the ensuing damages to plaintiff.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 941.]

**3. SAME—CRIMINAL CRUELTY—CONFINEMENT OF CATTLE WITHOUT UNLOADING.**

Under Pen. Code, § 663, providing that a railway corporation which confines cattle in cars in the course of transportation for a longer period than 24 consecutive hours, without unloading for rest, water, and feeding, during 10 consecutive hours, unless prevented by storm or inevitable accident, is guilty of a misdemeanor, defendant's liability was established by proof that the cattle, which were confined in the car without unloading during the 35 hours of transportation, were injured by such criminal cruelty not embraced within either clause of the contract.

Jenks, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Albert R. Galloway against the Erie Railroad Company.  Judgment for defendant, and plaintiff appeals.  Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

M. N. Kane, for appellant.

Philip A. Rorty, for respondent.

HIRSCHBERG, P. J.  The plaintiff, a shipper, contracted with the defendant, a common carrier, for the transportation of 23 cows and a calf at reduced rates from East Buffalo, in Erie county, to Monroe, Orange county.  The cattle were placed in a car attached to a train at East Buffalo at about 3 o'clock in the afternoon of November 25, 1901, and left East Buffalo at about 6 o'clock.  The train reached Port Jervis, Orange county, within 38 miles of the destination of the cattle, between 4 and 5 o'clock on the afternoon of November 26th.  They were then in good condition, but at that station the car containing them was detached from the train and left standing in the Port Jervis yard until 8 o'clock, when it was attached to another train and carried to Monroe, stopping and switching at almost every station, and reaching Monroe at about

2 o'clock on the morning of November 27th. It appears to be undisputed that the cattle were confined in the car without unloading during the entire 35 hours, and it is also undisputed that, on reaching Monroe, one of them died, and all the others were found to be injured from the continuous and protracted confinement. The plaintiff sued for the damages resulting from the injury to the cattle, alleging that the defendant, in violation of its contract, "did not safely and properly and promptly carry and deliver" them in proper condition; and the complaint was dismissed at the close of his case upon the ground that by the terms of the contract he had expressly relieved the defendant from liability, or had so limited the liability that there could be no recovery upon the proof given.

The provisions of the contract which bear upon the question are as follows:

"The said carrier, or any connecting carrier, shall not be liable for or on account of any injury sustained by said live stock, occasioned by any or either of the following causes, to wit, overloading, crowding one upon another, kicking or goring, suffocating, fright, burning of hay or straw or other material used for feeding or bedding, or by fire from any cause whatever, or by heat, cold, or by change in weather, or for delay caused by stress of weather, by obstruction of tracks, by riots, strikes, or stoppage of labor, or from causes beyond their control. That in the event of any unusual delay or detention of said live stock, caused by the negligence of the said carrier or its employés, or its connecting carriers or their employés, or otherwise, the said shipper agrees to accept, as full compensation for all loss or damages sustained thereby, the amount actually expended by said shipper in the purchase of food and water for the said stock while so detained."

No cause or excuse was presented upon the trial for the deliberate severing of the car containing the cattle from the train at Port Jervis, or for the delay in transportation from that place to Monroe; and it must accordingly be assumed, on this appeal, that the detention was caused by the defendant's negligence. If, under the terms of the contract, the injury which resulted to the cattle is to be regarded as included within the expression contained in the second clause of the contract above quoted, viz., "all loss or damage sustained thereby," the plaintiff is clearly confined to a recovery of the expense incurred in the purchase of food and water. In a general sense it must be conceded that injury to the cattle necessarily involves loss or damage to the owner, equally as would a fall in market values during a period of detention, or damage by reason of his failure to deliver the cattle to a purchaser pursuant to an agreement to do so. If the contract could be construed broadly and liberally in favor of the carrier, it would probably be necessary so to hold. But the law requires that a contract should be construed strictly against a common carrier, where its purpose is to limit the common-law liability, and, so construed, there is nothing in this contract which expressly or in set terms limits the defendant's liability for what has actually occurred, viz., injury to the live stock owing to delay or detention caused by the defendant's negligence. The exemption provided by the contract relates solely to injuries to the cattle from causes which it is conceded have not occurred, and the limit of liability provided for relates to a loss or damage ostentatiously dissociated from injury to the cattle as such.

In construing the contract strictly against the defendant, some motive and purpose must be ascribed to the division of the hazards into two classes, differing in the results, as well as in the extent, of the exemption. The motive and purpose seem obvious. The first clause relates to the risks specifically enumerated, and to delay caused, not by the defendant's negligence, but by events beyond the defendant's control. If such risks or delay occasion injury to the cattle, as a separate and distinct thing from loss or damage to the owner not incidental to such injury, the exemption is to be absolute. The second clause relates to loss or damage to the owner as a separate and distinct thing from injury to the cattle, and which may easily be occasioned without such injury. If this loss or damage, not including injury to the cattle, is occasioned by delay due to the defendant's negligence, the limit of liability is to be recompense for the cost of sustenance during the period of neglect. Neither clause, it will be seen, exempts the defendant in precise words from liability for its neglect resulting in injury to the cattle. In this view the contract is reasonable and intelligible. In any other view it is difficult to see why the exemption and limitation have been divided into two elaborate clauses, dependent upon differing results, if one is included in the other, when a single simple provision would have sufficed, exempting the defendant from all liability for the specified causes and delay beyond its control, and limiting such liability for delay through its own negligence. The defendant, in this view, is to pay nothing if it is not blamable, and to pay but little even for its own fault (nothing for compensation, but only reimbursement of actual expenditure), with the reasonable proviso that the negligence has not been so gross or effective as to damage or destroy the plaintiff's property. In other words, as I construe this contract, if there is injury to the cattle from the specified causes, or from delay for which the defendant is not chargeable because of any fault on its part, the plaintiff is not to receive a cent, even although all his cattle are killed; but, if there is a delay by reason of the defendant's negligence, he is to be paid back the money he may have spent in caring for the cattle "while so detained," as full compensation for the loss or damage which he may suffer solely by the lapse of time in delivery, and on the assumption that he finally, although tardily, receives his property unimpaired. The view taken further avoids the absurdity of so construing the contract as to permit the defendant to sidetrack the cattle anywhere and to negligently leave them there until they should die from confinement and neglect, with the understanding that the owner would be reimbursed as full compensation on receiving the value of such food and water as he might manage to furnish them during the throes of dissolution. It certainly challenges credence to assert that a sane shipper has intentionally contracted that, if a carrier kill his cattle by neglect, he will be perfectly satisfied on receiving back the trifling sum he may have spent in a fruitless effort to avert the fatality. The primary purpose of the shipper in making the contract was to procure the transportation and delivery of live

stock, and only compelling words will justify a construction which renders that purpose secondary or immaterial.

Aside from these considerations, however, the liability of the defendant was clearly established because the proof was sufficient to justify the conclusion that the cattle were injured by criminal cruelty not embraced within either of the clauses referred to. By section 663 of the Penal Code it is provided that a railway corporation, which confines cattle, or causes or suffers them to be confined, in cars in the course of or for transportation, for a longer period than 24 consecutive hours, without unloading for rest, water, and feeding, during 10 consecutive hours, unless prevented by storm or inevitable accident, is guilty of a misdemeanor. The allegations of the complaint are broad enough to sustain the proof, and the question was raised upon the trial and decided adversely to the plaintiff. It is true that the section of the Penal Code also includes in its condemnation an owner, agent, consignee, or person in charge of the cattle; but it does not appear that the plaintiff had any control of the operation or movement of the defendant's trains, or that he had any power to enforce compliance with the requirements of the statute. He did protest at Port Jervis against the leaving of the car there, and caused the telegraph operator at that station to send an unavailing request to the company's main office for permission to have the car proceed with the train which had brought it there. The statute is aimed against cruelty to animals, and the plaintiff's acquiescence, as a bar to a recovery, would seem to be a proper question for the jury in any event rather than one of law. But, as the proof stands, it certainly cannot be said, as matter of law, that he was so far in fault as to justify a nonsuit.

The principle of construction applicable to this case is illustrated by many decisions of the Court of Appeals. In Perkins v. New York Cent. R. Co., 24 N. Y. 196, 82 Am. Dec. 281, the general rule was laid down that a railroad corporation cannot by contract exempt itself from liability to a passenger for damages resulting from its own willful misconduct or recklessness which is equivalent thereto. In Blair v. Erie Railway Company, 66 N. Y. 313, 23 Am. Rep. 55, it was held that the terms of a contract which will exempt a railroad corporation from liability for negligence must be clear and unmistakable. In Mynard v. Syracuse, etc., R. R. Co., 71 N. Y. 180, 27 Am. Rep. 28, the exemption in consideration of transportation at a reduced rate included "all claims, demands, and liabilities, of every kind and character whatsoever, for or on account of, or connected with, any damage or injury to or the loss of said stock, or any portion thereof, from whatsoever cause arising." It was held that the exemption did not include a loss arising from the carrier's negligence; that where general words in the contract of a common carrier, limiting liability, may operate without including the negligence of the carrier or his servants, it will not be presumed that they were intended to include it; that every presumption is against such an intention; and that the contract would not be construed as exempting from liability for negligence, unless the intention is expressed in unequivocal terms. In

Holsapple v. Rome, Watertown, etc., R. R. Co., 86 N. Y. 275, the carrier, in consideration of a reduction in freight, was released from liability for injuries to sheep "caused by burning of hay, straw, or other material used for feeding said animals, or otherwise." It was held that the carrier was liable for the burning of the sheep, inasmuch as it had omitted to supply the train with appliances for the extinguishment of the fire, and there were no express words in the contract exempting it from liability for its own negligence. The theory underlying the decision is that the shipper, in relieving the carrier from liability, assumes the exercise on its part of every care and duty which the law enjoins, and which is not expressly covered by the precise language of the exemption. In Nicholas v. N. Y. C. & H. R. R. Co., 89 N. Y. 370, the exemption was for "damage occasioned by delays from any cause or from change of weather"; and it was held, that the exemption did not include a loss occasioned by the negligent delay of the carrier in the transportation. In Canfield v. Baltimore & Ohio R. R. Co., 93 N. Y. 532, 45 Am. Rep. 268, the transportation was expressly "at the owner's risk"; but it was held that the defendant was nevertheless bound to exercise reasonable care and prudence in the transportation, and was liable for loss resulting from a failure in that respect. To the same effect is Kenney v. N. Y. C. & H. R. R. Co., 125 N. Y. 422, 26 N. E. 626. The court said, at page 425 of 125 N. Y., page 627 of 26 N. E.:

"The rule is firmly established in this state that a common carrier may contract for immunity from its negligence, or that of its agents; but that, to accomplish that object, the contract must be so expressed, and it must not be left to a presumption from the language. Considerations based upon public policy and the nature of the carrier's undertaking influence the application of the rule, and forbid its operation, except where the carrier's immunity from the consequences of negligence is read in the agreement ipsissimis verbis."

It follows, from the logic of these decisions and many others which might be cited, that the court is not at liberty to read into the agreement between the parties in this case anything which is not clearly and unequivocally expressed; that there is not to be found so expressed either exemption from, or limitation of, liability resulting from delay by reason of the defendant's negligence, of such a character as to occasion injury to the animals in process of transportation; and that, beyond all possible question, there is not to be found so expressed any immunity whatever from the consequences of cruel treatment inflicted by the defendant upon the animals in its charge, in violation of a penal statute, assuming for the moment that such immunity could lawfully be conferred.

The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the event. All concur, except JENKS, J., who reads for affirmance.

JENKS, J. I dissent. This action is by shipper against a common carrier for its negligent delay and detention of cattle, so that the cattle sickened. The shipment was under a written contract, whereby the carriage was below the published tariff rate. When

the plaintiff closed, the court dismissed the complaint on the ground that the defendant had limited its liability and that no damages were proven within the limitation. The said contract of shipment in part provided:

"The said carrier, or any connecting carrier, shall not be liable for or on account of any injury sustained by said live stock, occasioned by any or either of the following causes, to wit, overloading, crowding one upon another, kicking or goring, suffocating, fright, burning of hay or straw, or other material used for feeding or bedding, or by fire from any cause whatever, or by heat, cold, or by change in weather, or for delay caused by stress of weather, by obstruction of tracks, by riots, strikes, or stoppage of labor, or from causes beyond their control. That in the event of any unusual delay or detention of said live stock, caused by the negligence of the said carrier or its employés, or its connecting carriers or their employés, or otherwise, the said shipper agrees to accept, as full compensation for all loss or damages sustained thereby, the amount actually expended by said shipper in the purchase of food and water for the said stock while so detained."

The contention of the learned and able counsel for the appellant is that the wrong complained of is not within the purview of the second paragraph. I think that it is not within the purview of the first paragraph, for the "injury" therein mentioned is not one occasioned by delay, but by delay caused by stress of weather and other specified mishaps. And the purpose of the paragraph is not to avoid liability for negligence, but such liability as might arise upon the principle stated in Harmony v. Bingham, 12 N. Y. 99, 107, 62 Am. Dec. 142, and Lorillard v. Clyde, 142 N. Y. 456, 462, 37 N. E. 489, 24 L. R. A. 113. I think that the second paragraph does not contemplate only loss or damage arising from delay in delivery, such as, e. g., loss by a fall in market price, or failure to deliver to a consignee at a stipulated time. Its terms relieve the common carrier from all loss or damages sustained by unusual delay or detention caused by the negligence of said carrier, etc. I think that the sickness of cattle which impaired their value is a loss or damage within the intendment of the expression "loss or damages," while the plaintiff pleads that the sickness, injury, and damage were due to the negligent delay and detention.

The defendant could have relieved itself from all liability for negligence by special contract of explicit expression in unequivocal terms. Mynard v. Syracuse, etc., R. R. Co., 71 N. Y. 180, 27 Am. Rep. 28; Kenney v. N. Y. C. & H. R. R. Co., 125 N. Y. 422, 26 N. E. 626. If, instead of a contract for absolute immunity, it chose to except its liability for the actual expense of the shipper for food and water during a detention, the fact that this liability does not afford compensation in this case is not material in the construction of the contract. The appellant contends that the words "or otherwise" must be returned to the word "negligence," so that the expression should read "by the negligence of the said carrier or otherwise," and thereupon argues that the sole purpose of the clause is not to provide for loss by negligence. But I construe the expression "or otherwise" as referring to negligence, under the rule that the phrase "or otherwise," when following an enumeration, should receive an ejusdem generis interpretation. Peo-

ple ex rel. Huber v. Feitner, 71 App. Div. 479, 75 N. Y. Supp. 738, and authorities cited, affirmed on opinion below 171 N. Y. 683, 64 N. E. 1124.