It is clearly within the legislative power to deny an appeal. No one seems to question this, and, the language of the statute providing that in "the case of a new appraisal the second report shall be final and conclusive," it is difficult to understand how the appellant have any standing upon this appeal.

The motion to dismiss the appeal should be granted, with costs. All concur.

---

(116 App. Div. 777)

## GALLOWAY v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department. January 11, 1907.)

1. CARRIERS—SHIPPING CONTRACT—CONSTRUCTION.

   Provisions in a contract of shipment limiting the liability of a carrier, where equivocal, are to be construed against the carrier.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 697.]

2. SAME—CARRIAGE OF LIVE STOCK—LIMITATION OF LIABILITY.

   A provision in a contract for the shipment of live stock to the effect that, in the event of any unusual delay owing to the carrier's negligence, the shipper shall accept as full compensation the amount expended in the purchase of food and water, does not prevent recovery in a case where the shipper during the period of delay was unable to obtain food and water, and in consequence of the delay some of the cattle died, but only contemplates a case where the shipper can feed and water the cattle during the delay, and thereby save them, and does so.

3. APPEAL—WAIVER OF EXCEPTIONS.

   Exceptions to refusals to give instructions are waived, where not mentioned by appellant in his oral argument or brief.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4256, 4259.]

   Jenks, J., dissenting.

Appeal from Trial Term, Orange County.

Action by Albert R. Galloway against the Erie Railroad Company. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

See 95 N. Y. Supp. 17.

The cause of action alleged by the complaint is for damages for injuries to cattle by negligent delay in transit as freight on the defendant's road.

The plaintiff shipped 23 cows by the defendant's road from Buffalo to the plaintiff's cattle switch near Monroe, Orange Co., N. Y., on November 25th. 1901. He accompanied his cattle. The train was a daily fast freight through to Jersey City; it carried perishable freight such as cattle, meat, fruit and the like. It left Buffalo on time, viz., at 6 p. m. November 25th, 1901, and arrived at Port Jervis on time, viz., at 4:40 p. m. November 26th, a distance of 336 miles. There, as was usually but not always, done, cars not carrying through freight to Jersey City were cut out of the train and put into a local train, so that the through freight might go through without delay.

The local train to which the car carrying the plaintiff's stock was transferred lay at Port Jervis until 7:52 p. m., when it started, a delay of about 3 hours. The testimony for the defendant is that the delay was caused by the engine of the train being repaired, but that there were plenty of other engines there. The plaintiff testified that the train arrived at his switch at Monroe at "about" 2 o'clock next morning, which would make the whole time of transit from Buffalo about 32 hours. The towerman at Oxford tower, at which plaintiff's switch is, testified from his train sheets that the train arrived there at 12:25 and left at 12:40 a. m. The conductor of the train testi-

fied that the plaintiff's car was dropped at his switch at 12:35 a. m. This would make the whole time of transit from Buffalo 30½ hours and from the time of arrival at Port Jervis 9 hours and 20 minutes. The train stopped often between Port Jervis and the plaintiff's place, almost at every station, and backed up and switched and dropped and took on cars. On arrival at the plaintiff's switch, a distance of 38 miles from Port Jervis, nine of the cows were down, six of them had calved, and the calves were dead, and one cow died in a few hours thereafter.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Henry Bacon, for appellant.
M. N. Kane, for respondent.

GAYNOR, J. The law makes a common carrier liable as an insurer for the safe carriage and delivery of freight, the acts of God and of public enemies excepted. The defendant is therefore liable unless the contract of shipment shields it. It contains the following clause applicable to the case, viz.:

"That in the event of any unusual delay or detention of said live stock, caused by the negligence of the said carrier, or its employés, or otherwise, the said shipper agrees to accept as full compensation for all loss or damages sustained thereby, the amount actually expended by said shipper, in the purchase of food and water for the said stock, while so detained."

The plaintiff claims that while this exemption does cover negligent delay, it does not contemplate the damage which resulted in this case from such negligent delay, viz., damage from killing and injuring the cattle. He claims that it only contemplates the "loss or damages" which the consignee may sustain by realizing a lower price in the market for his cattle on their tardy arrival in good condition by reason of the market price having fallen during the delay. In a word, he claims that the exemption only relates to the case of cattle which arrive safe and sound; that it does not apply to the case of cattle killed or physically injured by the negligent delay.

This seems to be the true construction of the exemption clause. It only contemplates a case of negligent delay where the shipper can feed and water the cattle during the delay and thereby save them, and does so. It does not mean a case where it is impossible to do so during the period of negligent delay; and in this case there was no place or means to feed and water them at Port Jervis or between there and Monroe, where the negligent delay occurred. The plaintiff had to depend on the defendant for place and opportunity to feed and water. It would therefore be unreasonable to hold that the exemption was meant to apply except in a case where they are furnished by the defendant. If in that case the shipper neglect to feed and water his cattle, the defendant is not liable for any sum—the shipper's neglect would be the cause of death or physical injury to the cattle. But if he feed and water them, then the defendant is liable for the expense thereof, but for no other loss or damage, for such is the exemption.

If the contract may bear this construction that suffices for the plaintiff, for the law is that such contracts of exemption have to be

construed against the carrier when they are equivocal. This case has been here before (107 App. Div. 210, 95 N. Y. Supp. 17).

The learned trial judge was requested by the defendant to charge that unless the jury could find from the evidence that the injury occurred after the train arrived at Port Jervis, the plaintiff could not recover. The exception to the refusal was technically good, for there is no evidence of any delay before reaching that place. But the learned counsel for the defendant has waived this error by not mentioning it in his oral argument nor in his brief. We are therefore not called upon to consider whether it be substantial. In the same way he has waived the exceptions to the refusals to charge his requests in respect of the violation of section 663 of the Penal Code, and the charge of the plaintiff's request on that head. They may be serious, but it is not for us to seek out and enter into errors which the learned counsel for the defendant does not claim to be aggrieved by.

The judgment and order should be affirmed.

WOODWARD and RICH, JJ., concur. HOOKER, J., concurs in result. JENKS, J., dissents, upon his dissenting opinion in Galloway v. Erie R. R. Co., 107 App. Div. 210, 95 N. Y. Supp. 17.