CARLETON v. UNION TRANSFER & STORAGE CO. et al.

(Supreme Court, Appellate Division, First Department.   March 11, 1910.)

1. CARRIERS (§ 158*)—CONTRACT OF CARRIAGE—LIMITATION OF LIABILITY—CONSTRUCTION.

There was stamped in a blank space on the bill of lading, under the description of the articles shipped, a provision that the consignor had an option of shipping at a higher rate without limitation as to value in case of damage, but agreed to the valuation named in consideration of the lower rate, and the shipper's agent signed his name on a blank dotted line thereunder, marked "Shipper," and beneath that was stamped, "Valuation restricted to $5 per hundred pounds." The gross weight, which was the only weight given, was 12,000 pounds, and the column of the bill of lading in which the weight was written was headed: "Weight. Subject to correction." There were more than 120 items of household goods in the shipment, and no particular article was identified by the hundredweight. *Held*, that the stamped provision restricting the valuation to $5 per hundred pounds was a mere substitute for the total valuation on the basis of the gross weight, and the shipper's right to recover was not limited to $5 per hundredweight of that part of the goods weighed separately, so that he need not show the weight of the goods damaged.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 708; Dec. Dig. § 158.*]

2. CARRIERS (§ 156*)—BILL OF LADING—LIMITING COMMON-LAW LIABILITY—STRICT CONSTRUCTION.

A bill of lading prepared by the railroad company, which tended to limit its common-law liability should be strictly construed against the carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 697; Dec. Dig. § 156.*]

3. CARRIERS (§ 158*)—LIMITING CARRIER'S LIABILITY—AGREED VALUATION.

A carrier may, in consideration of a reduced rate granted, limit its liability to a special valuation of the goods agreed upon.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 663; Dec. Dig. § 158.*]

4. CARRIERS (§ 132*)—INJURY TO GOODS—PRESUMPTIONS—NEGLIGENCE.

If goods were properly prepared for shipment and loaded under the carrier's inspection, and accepted by it for shipment, it is presumed that any damage to the goods shown when unloaded at destination would not have occurred if they were transported and stored with due care.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 578–582, 606; Dec. Dig. § 132.*]

Appeal from Appellate Term.

Action by Bertha J. Carleton against the Union Transfer & Storage Company and the New York Central & Hudson River Railroad Company. From a judgment of the Appellate Term (64 Misc. Rep. 51, 117 N. Y. Supp. 1021) affirming a judgment for plaintiff, the defendant railroad company appeals. Affirmed.

See, also, 134 App. Div. 967, 119 N. Y. Supp. 1117.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

William Mann, for appellant.
Russell H. Robbins, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LAUGHLIN, J. On the 4th day of September, 1906, the plaintiff delivered a car load of household goods and furniture to the appellant at Brookline, Mass., to be shipped to New York City. The consignee was notified of the arrival of the goods at their destination on the 11th day of the same month, and six days thereafter they were taken from the car and stored by the defendant Union Transfer & Storage Company until the 11th day of October, when they were delivered at the plaintiff's new residence No. 15 West Eighth street, borough of Manhattan, New York, in a damaged condition. The action was brought against both companies to recover the damages thus sustained by plaintiff, upon the theory that they were both negligent in transporting and handling the property. The damages to the goods were shown to be $893. The jury under a charge to which exception in this record was not taken was permitted to apportion the damages between the respective companies, holding each responsible for the damages caused by it, and they found a verdict in favor of the plaintiff against the appellant for $600 and against the Union Transfer & Storage Company for $293, the remainder of the damages. No appeal was taken by the storage company, and the question as to whether the evidence afforded a proper basis for this apportionment of the damages between the two companies is not presented. The learned counsel for the appellant presents two points only for consideration on the appeal. He contends that the plaintiff should have shown the weight of the damaged goods, and should have been limited to a recovery at the rate of $5 per hundred pounds on such weight, and also that the verdict, in so far as the appellant was found guilty of negligence, was against the weight of the evidence.

The appellant pleaded and introduced in evidence the bill of lading, which was delivered to the plaintiff's agents, who shipped the goods for her and surrendered to the carrier on the delivery of the goods to the storage company at New York. The appellant relies upon a condition of the bill of lading limiting its liability. On the face of the bill of lading, in the blank space under the heading "Description of Articles," under which was written "H H Goods," meaning household goods, was stamped in red ink the following:

"The consignor of this property has the option of shipping same at a higher rate without limitation as to value in case of loss or damage from causes which would make the carrier liable, but agrees to the specified valuation named in case of loss or damage from causes which would make the carrier liable, because of the lower rate thereby agreed for transportation."

And thereunder, on a dotted blank line with the word "Shipper" stamped beneath it, the plaintiff's agents who packed and shipped the goods for her signed their firm name as the shipper. Underneath the signature and in the same blank space was stamped in red, but in larger type, the following: "Valuation restricted to $5.00 per 100 lbs." The bill of lading further showed that the freight charges were $34.80, and that the weight of the goods was 12,000 pounds.

The learned counsel for the appellant contends that this special contract did not constitute a gross valuation of the goods at $600, but that by it the cargo of household goods and furniture was in effect

divided into 120 parts, and a valuation of $5 placed upon each. Neither the contract itself nor the nature and condition of the goods affords a basis for that contention. · There were more than 120 items of prop-' erty, and it is improbable that they could have been separated into 120 parts of equal weight. There was nothing to identify any particular hundredweight. It would therefore be impossible to know in advance, as might be known in the case of the shipment of animals or sealed packages or goods of a uniform quality or value, what articles of the household goods and furniture were comprised in the separate allot- ment into parts of the weight of a hundred pounds each. The shipper, therefore, on that view of the contract, would not be entitled in any contingency to recover damages to the full extent of $5 per hundred pounds, unless all of the goods were damaged or destroyed. The con- struction claimed in behalf of the appellant would require that the damaged or destroyed property be considered separately, and that the recovery be limited to $5 per hundredweight of that part of the ship- ment. It might be claimed in behalf of the plaintiff with equal force that she should be at liberty to pick out an article damaged to the ex- tent of $5, and have it weighed off with other articles not damaged, and ascertain the total liability of the carrier. Moreover, there is no other valuation stated in the bill of lading, and only one weight, viz., the gross weight, is given. There is no evidence that the shipment was subdivided and then separately weighed. The reasonable construction of the contract is therefore that the shipper accepted for the plaintiff a low freight rate, and in consideration therefor agreed upon this valu- ation as a means of arriving at a gross valuation. It is to be borne in mind that the bill of lading was prepared by the railroad company, and that it tends to limit its common-law liability, and therefore it is to be strictly construed against it. Mynard v. Syracuse, etc., R. R. Co., 71 N. Y. 180, 27 Am. Rep. 28; Hoye v. Penn. R. R. Co., 191 N. Y. 101, 83 N. E. 586, 17 L. R. A. (N. S.) 641; Galloway v. Erie R. R. Co., 116 App. Div. 777, 102 N. Y. Supp. 25, affirmed 192 N. Y. 545, 84 N. E. 1113; Jennings v. Grand Trunk Railway Co., 127 N. Y. 438, 28 N. E. 394. It evidently was more convenient for the agents of the common carrier· to use this stamp which would print on the bill of lading that the valuation was restricted to $5 per 100 pounds than to figure out the total valuation at· that rate, based on the weight, and write the same in.

We are of opinion that the stamp, as used, was a mere substitute for writing in the total valuation as thus computed, and that the con- tract is to be construed as if the bill of lading had stamped on it, in- stead of the words "Valuation restricted to $5.00 per 100 lbs.," the words "Valuation restricted to $600," which in each instance would have required a computation, and, since the total valuations would vary, would also doubtless require that the valuation be written in, thus requiring more work and consuming more time on the part of the agents of the carrier. Another possible reason for the use of the stamp, estimating the value by the hundred pounds weight, is that· the column on the bill of lading in which the weight is written is headed "Weight. Subject to correction"; and, since the weight had only ap-

parently been estimated and might be increased or reduced, it may have been deemed more practicable to fix the valuation at so much per hundred pounds. That, however, is no indication of an intent to subdivide such a cargo into one hundred pound lots, where it was not so divided when delivered for shipment. We think that it was the intention of the carrier to afford the shipper the benefit of a reduced rate on condition that a special valuation of the cargo be agreed upon by which the liability of the carrier would be limited. It has long been the established rule that it is competent for a common carrier to make such a contract with the shipper. Hart v. Penna. R. R. Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; Zimmer v. N. Y. C. & H. R. R. Co., 137 N. Y. 460, 33 N. E. 642; Tewes v. North German Lloyd S. S. Co., 186 N. Y. 151, 78 N. E. 864, 8 L. R. A. (N. S.) 199; Rosenthal v. Weir, 170 N. Y. 148, 63 N. E. 65, 57 L. R. A. 527; Greenwald v. Weir, 130 App. Div. 696, 115 N. Y. Supp. 311. The facts clearly distinguish the case at bar from those in which the contract of shipment has been construed as showing an agreement that the valuation of goods consigned should be deemed, both for the purpose of fixing the carrying charges and limiting the liability, an amount specified in the bill of lading for each separate case or package, of which Brown v. Cunard S. S. Co., 147 Mass. 58, 16 N. E. 717, and Pearse v. Quebec S. S. Co. (D. C.) 24 Fed. 285, are examples, and that the like valuation of animals should be deemed for like purposes a given price per head, of which Hart v. Penn. Rd. Co. and Zimmer v. N. Y. C. & H. R. R. Co., supra, and Winslow Bros. v. Atlantic Coastline, 79 S. C. 344, 60 S. E. 709, Starnes v. V. R. R. Co., 91 Tenn. 516, 19 S. W. 675, and Nelson v. Great Northern, 28 Mont. 297, 72 Pac. 642, are instances.

We are of opinion, therefore, that it was not incumbent on the plaintiff to show the weight of the goods damaged or destroyed, and that he was not limited in his right to recover to $5 per hundredweight of that part of the goods weighed separately. It is unnecessary, therefore, to decide whether, if the bill of lading required the construction for which the appellant contends, it would be valid or whether it would be void as contrary to public policy, and therefore we express no opinion on that question.

We are also of opinion that the evidence was sufficient to sustain the verdict on the question of the negligence of the appellant. Evidence was adduced in behalf of the plaintiff tending to show that the goods were properly prepared for shipment and properly loaded into the car, and that appellant's agent inspected the manner in which they were loaded and accepted them for shipment, and that they were taken from the car at their destination in a seriously damaged condition, which presumptively would not have occurred if they had been transported and stored with due care. Hoffberg v. Bumford, 88 N. Y. Supp. 940.

It follows, therefore, that the determination of the Appellate Term should be affirmed, with costs. All concur.