ELSIE ARONSTEIN, Plaintiff, *v.* NEW YORK CENTRAL RAILROAD
COMPANY, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District,
July 13, 1928.

Carriers — carriers of freight — action to recover damage to property in
transit — shipment consisted of several rugs contained in two packages,
with a gross weight of 163 pounds — contract of carriage stipulated that
agreed or declared value was $125 per 100 pounds — one rug contained
in package was injured — agreed value under contract of carriage for
total shipment was $250 — plaintiff may recover full amount of damages
up to $250.

The plaintiff is suing to recover damages to a rug which was injured while in
railroad transit.  There were two packages of rugs with a gross weight of 163
pounds.  The declared value of the rugs, according to the contract of carriage,
did not exceed $125 per 100 pounds.  One of the rugs was damaged to the
extent of $85.  Under the terms of the contract of carriage, the shipment is
treated in its entirety, and as so treated, the declared value thereof was $250,
since there were more than 100 pounds in the shipment.

Under the terms of the contract, the plaintiff had the right to recover the entire
amount of damage, since that amount is less than $250, and she is not called
upon to apportion the damage.  Therefore, the plaintiff is entitled to recover
the actual damage to the injured rug which was fixed at $85.

ACTION to recover damages to freight in interstate transit.

*Emmet L. Holbrook,* for the plaintiff.

*Alex. S. Lyman* [*Thomas McCall* of counsel], for the defendant.

GENUNG, J.  This is a controversy submitted on an agreed
statement of facts.  Plaintiff seeks to recover for damage in
transit to property moving in interstate commerce.  Liability is
conceded.  Three rugs of different weight and value were wrapped
in one bale of burlap, weighing 152 pounds, and one rug was wrapped
in one bale, weighing 11 pounds, making a gross weight of 163
pounds.  The freight charges applicable and paid by the con-
signee upon delivery amounted to three dollars and forty-one cents,
which was determined by applying the first-class rate of two dollars
nine and one-half cents per 100 pounds to the gross weight.  The
contract of carriage contained these clauses:

" Note.— Where the rate is dependent on value, shippers are
required to state specifically in writing the agreed or declared
value of the property.  The agreed or declared value of the
property is hereby specifically stated by the shipper to be not
exceeding $125 per hundred pounds."

" Sec. 2 (a)   *   *   *   In all cases not prohibited by law, where

a lower value than actual value has been represented in writing by the shipper or has been agreed upon in writing as the released value of the property as determined by the classification or tariff upon which the rate is based, such lower value plus freight charges if paid shall be the maximum amount to be recovered, whether or not such loss or damage occurs from negligence."

In so far as the rate of freight or the charge for transportation was in any way based upon the released or agreed value, the defendant's filed schedules and tariff rates provided that the first-class rate based on weight applied where such value was less than or did not exceed $125 per 100 pounds, and where such value amounted to more than $125 per 100 pounds but to less than $250 per 100 pounds, then the rate of freight applicable was one and one-half times the first-class rate based on the weight. Concededly, the freight charges would be the same for a gross valuation of $250 on the shipment as for a valuation of $75. In the shipment of rugs, one of the three rugs in the larger bale of the value of $150 was damaged to the extent of $85. Separated from the shipment it weighed sixty pounds. The plaintiff claims the agreed or released value was $250 and the defendant must respond in damages up to that amount for the full actual damage to the property. The defendant contends that the damaged rug was released at a value of $75 and that it is liable only for that proportion of the actual damage done to the property as the declared or released value bears to the actual value of the property undamaged, which it claims is $42.50.

Two questions are presented, namely: (1) What was the declared or released value; and (2) to what part of the values so declared or released is the plaintiff entitled in damages. The defendant is liable as an initial carrier under the Interstate Commerce Act, as amended. (*Kansas City Southern R. Co.* v. *Carl*, 227 U. S. 639; *Atlantic Coast Line R. R. Co.* v. *Riverside Mills*, 219 id. 186.) The liability assumed is covered in full by the Federal statutes. (*New York & Norfolk R. R. Co.* v. *Peninsula Produce Exchange*, 240 U. S. 34; *Adams Express Co.* v. *Croninger*, 226 id. 491.) The rights and liabilities are determined by the terms of the bill of lading, the filed classification and tariffs and the provisions of the said act as interpreted by the United States Supreme Court. (*Southern R. Co.* v. *Prescott*, 240 U. S. 632; *Southern Express Co.* v. *Byers*, Id. 612; *Missouri, Kansas & Texas R. Co.* v. *Harriman*, 227 id. 657; *Burke* v. *Union Pacific R. R. Co.*, 226 N. Y. 534; *Barnet* v. *N. Y. Central & H. R. R. R. Co.*, 222 id. 195; *O. K. Display Fixture Co.* v. *American R. Express Co.*, 121 Misc. 816; *Strahs* v. *N. Y. Central R. R. Co.*, 113 id. 273.) The material portions of the act provide:

" Sec. 20, par. 11. That any common carrier, * * * shall be liable * * * for the full actual loss, damage, or injury to such property caused by it * * * (except) to property * * * concerning which the carrier shall have been * * * expressly authorized or required * * * to establish and maintain rates dependent upon the value so declared in writing * * * as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, * * * ; and any tariff schedule which may be filed * * * may establish rates varying with the value so declared or agreed upon; * * *." (38 U. S. Stat. at Large, 1197; 39 id. 441, 442.)

As to the first question, the stipulation specifically states the agreed or declared value to be " not exceeding $125 per hundred pounds." Several items of different weight and value comprised the shipment. None of the individual articles were weighed separately nor was a value or rate computed on the individual items. The nature and condition of the commodity precluded such a process. Markets do not measure the value of rugs by weight. When we read the bill of lading and the release, in the light of the filed schedules of tariffs and the rate paid, it is obvious that the parties mutually understood that the bales contained rugs of the average value per hundredweight of $125. (*Kansas City Southern R. Co.* v. *Carl, supra.*) The reasonable construction of the contract is, therefore, that the shipper accepted for the plaintiff a low freight rate, and in consideration therefor agreed upon this valuation as a means of arriving at a gross valuation. (*Carleton* v. *Union Transfer & Storage Co.*, 137 App. Div. 225.) The shipment weighed 163 pounds and there was, therefore, a declared or released value of $125 for 100 pounds, and an additional $125 for an additional 100 pounds, or fraction thereof. The act plainly prescribes that tariff schedules must establish rates varying with the value declared or agreed upon in order to effectuate a limitation of liability. (Int. Com. Act, § 20, ¶ 11, *supra.*) Limitations of liability to an agreed or declared value have been upheld in common carrier contracts solely upon the ground that in the instances sustained the rate of freight was based on and dependent upon the value declared or agreed upon; that the shipper was afforded a lower charge for transportation on condition that liability should be to the extent of such valuation and no further; in other words, that " the rate was tied to the release." (*Missouri, Kansas & Texas R. Co.* v. *Harriman, supra; Adams Express Co.* v. *Croninger, supra; Kansas City Southern R. Co.* v. *Carl, supra; Hart* v. *Penn-*

*sylvania R. R. Co.*, 112 U. S. 331; *Boyle* v. *Bush Terminal R. R. Co.*, 210 N. Y. 389.) " This court has consistently held the law to be that it is against public policy to permit a common carrier to limit its common-law liability by contracting for exemption from the consequences of its own negligence or that of its servants * * * *and valuation agreements have been sustained only on principles of estoppel and in carefully restricted cases where choice of rates was given.*" ( *Union Pacific R. R. Co.* v. *Burke*, 255 U. S. 317.) The United States Supreme Court and the courts of New York have repeatedly refused to give effect to limitations of amount of recovery, either claimed or agreed upon between the parties, where a lower rate is not offered to or obtainable by the shipper because of it, or where some special consideration was not granted the shipper in return for the restriction claimed. (*Burke* v. *Union Pacific R. R. Co., supra; Union Pacific R. R. Co.* v. *Burke, supra; Kilthau* v. *International Mer. Mar. Co.*, 245 N. Y. 361.) The freight charges paid by the consignee on this shipment correspond to a declared or released value of $250. There was no lower rate offered or obtainable corresponding to the limitation claimed by the defendant. The parties, therefore, could not lawfully contract for a lower limitation without a reduction in rate. The filed schedules of tariffs made no provision for a reduced rate attached to the valuation contended for by the defendant. A common carrier having filed its schedule of tariffs fixing charges corresponding to a specified maximum of liability may not claim a declared or released value to be less than such sum without establishing a separate and lower rate to correspond. In view of the foregoing cases, it must be held that the declared or released value of this shipment was $250.

As to the second question, the contract of carriage does not provide for computation or proportioning of damages. It was not the engagement of the parties to the bill of lading that the value declared or released should be the medium for measuring damages in lieu of the usual way. The agreement stipulates, " the value of the property * * * to be not exceeding $125.00 per 100 pounds," and that, where a lower than actual value has been declared or released, " such lower value plus freight charges if paid shall be *the maximum amount to be recovered.*" The rate schedules affixed a maximum value of $250 to the freight paid on the shipment. To prevent the plaintiff from recovering the actual damage up to this amount, the defendant would have been required to establish a lower rate of freight corresponding to the limitation sought to be enforced. This the defendant did not establish. The valuation fixed in the bill of lading is intended to limit the extent of the

carrier's liability and the damages are ascertained in the usual way, and the carrier is required to pay them up to that amount. (*Adams Express Co.* v. *Croninger, supra; Hart* v. *Pennsylvania R. R. Co., supra; Lawrence Textile Corp.* v. *American Railway Express Co.,* 125 Misc. 858.) The act expressly provides, "such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released." (Int. Com. Act, § 20, ¶ 11, *supra.*)

The difference between the market value of the goods at destination in the condition in which they were shipped and their market value in the condition in which they were delivered by the carrier to the consignee, is the correct measure of actual damage. (*Kilthau* v. *International Mer. Mar. Co., supra; Greenwald* v. *N. Y. Central & H. R. R. R. Co.,* 95 Misc. 122.) It follows that the actual damage is eighty-five dollars, and the plaintiff is entitled to recover that amount since it does not exceed the limitation of liability of the defendant.

The defendant relies on *Duplan Silk Co.* v. *Lehigh Valley R. Co.* (223 Fed. 600) and *Mallison & Co.* v. *Barrett* (215 App. Div. 524). The action first mentioned was in admiralty and the facts were different from those in suit. The stipulations in the contract were different and the method of computing damages was provided. It was decided in March, 1915, and involved a shipment made before the amendments to the Interstate Commerce Act, enacted in 1915 and 1916 and known as the Cummins Amendments. In the other action mentioned the proportionate theory of damages was not adopted. The decision is based on the peculiar facts presented and *United Lead Co.* v. *Lehigh Valley R. R. Co.* (156 App. Div. 525) is cited as authority for it. In that case, McLAUGHLIN, J., distinguishes the case of *Carleton* v. *Union Transfer & Storage Co.* (*supra*) which applies to the present controversy. It is also to be noted that the case of *United Lead Co.* v. *Lehigh Valley R. R. Co.* was decided in May, 1913, and involved a shipment made in 1910 before the Cummins Amendments. To allow the defendant to proportion the damages in this case would grant it exemption from the results of its own negligence without giving to the shipper any special consideration or choice in the matter of rates. In no case cited has any court after reasoned consideration given effect to such an exemption. (*Kilthau* v. *International Mer. Mar. Co., supra.*)

Judgment is granted, therefore, in favor of the plaintiff in the sum of eighty-five dollars, with interest as demanded.