WILLIAM R. GOODHEART, JR., as Administrator, etc., of HARRY H. PINSLEY, Deceased, Appellant, *v.* AMERICAN AIRLINES, INC., Respondent.

Second Department, December 30, 1937.

*Harold M. Kennedy*, for the appellant.

*William E. Lyons*, for the respondent.

JOHNSTON, J.   In an action to recover damages for death alleged to have resulted from defendant's negligence, the jury returned a verdict for defendant.   Plaintiff's intestate was a passenger in an airplane owned and operated by defendant.   The airplane left Newark at five minutes past four P. M. on June 9, 1934.   Its destination was Buffalo, where it was due to arrive at seven P. M.   Two days later the airplane was found on the side of a mountain near Livingston Manor, N. Y.   Plaintiff's intestate and the other occupants were killed.

Plaintiff alleges the defendant's pilot was negligent, in that, among other things, he carelessly and without necessity therefor deviated many miles off the safe course that he was directed to follow, and took a course over a dangerous mountainous area with which he was unfamiliar, and proceeded at an unsafe altitude; that he risked the unsafe course for the purpose of wrongfully attempting to make a direct flight from the vicinity of Newburgh to Syracuse so as to avoid the additional mileage he would have had to travel if he had followed the prescribed course.

To establish his cause of action, plaintiff read the depositions of defendant's employees, from which it appears, without dispute, that there was both a regular and an alternate route from Newark to Buffalo.   The former was a direct route, northwesterly by way of Scranton and Elmira; the latter — approximately ninety miles longer — was northerly along the Hudson River Valley to a point about twenty miles south of Albany, then westerly along the Mohawk Valley to Buffalo, with a stop at Syracuse for refueling. There were emergency landing fields approximately thirty miles apart along the alternate route.   The weather forecasts indicated unfavorable weather conditions along the regular route and the pilot was instructed to proceed by the alternate route.   The rules required pilots to communicate at half-hour intervals with the defendant's nearest ground station.   At four-thirty-three P. M. the pilot reported to the Newark station that he was on his designated course and fifteen miles northwest of Newburgh, flying at an altitude of 1,800 feet, with a visibility of four miles.   No further reports were received from the pilot and, from five-thirty P. M. on, unsuccessful efforts were made by the Newark station to contact the plane.   After five P. M. defendant's nearest ground station

was Albany. From the time the plane left Newark until six P. M. there were no radical changes in the weather conditions, and several flights were completed on the alternate route from Albany to New York between three P. M. and seven P. M. The mountain where the plane crashed was 2,200 feet above sea level, and when the plane was found its nose was imbedded in the side of the mountain at a point about 200 feet below its summit. The place where the accident occurred was on a direct line between Newburgh and Syracuse. It was not a defined airway course and was fifty miles from the New York-Albany route. No requirement of the trip occasioned the presence of the plane where it was found. The territory over which the plane had flown to reach the place where the accident happened was mountainous and dangerous. The plane was equipped with all required blind flying instruments, including a compass, directional gyro, sensitive altimeter, turn and bank indicator, rate of climb indicator, artificial horizon, and a clock. The altimeter indicates the height of the airplane above sea level. The pilot also was furnished with maps showing the height above sea level of the area over which he was flying. None of the defendant's other passenger airplanes had ever flown over that territory. At the time of the flight the prevailing conditions on the alternate course would not have required the pilot to take the course he did. Defendant's manager at the Newark airport testified the Albany station was notified that the plane was to take the alternate route. Defendant's manager at the Albany station testified that that station was not so notified, and the first official information the Albany station had with respect to the airplane was from Buffalo, about seven P. M., to the effect that it was overdue.

Defendant's proof, furnished in large part by the same witnesses whose depositions the plaintiff read, shows that it complied with all the government's rules and requirements; that the plane had instruments and appliances in addition to those required by the rules of the Department of Commerce; that the plane and its equipment were inspected the day prior to the accident and also inspected by the pilot immediately before the flight; that the pilot and copilot were experienced and licensed operators. In brief, the defendant's evidence was offered to show that before the plane was permitted to leave Newark it had done everything which human foresight and ingenuity could suggest to insure a safe flight.

The court submitted the case to the jury on the theory of *res ipsa loquitur*. This clearly was error. The rule, as stated in *Whitcher* v. *Board of Education* (233 App. Div. 184) and recently

adopted in *Bressler* v. *New York Rapid Transit Corp.* (270 N. Y. 409, 413), is that " ' The doctrine of *res ipsa loquitur*, although it provides a substitute for direct proof of negligence where plaintiff is unable to point out the specific act of negligence which caused his injury, is a rule of necessity to be invoked only when, under the circumstances involved, direct evidence is absent and not readily available.' " Here, the plaintiff did not rely on the presumption arising from the doctrine of *res ipsa loquitur*. On the contrary, he pleaded and introduced evidence to establish the specific acts of negligence which, he alleged, resulted in the accident. Under these circumstances the doctrine did not apply.

It is true that by not excepting to the charge the plaintiff may be deemed to have acquiesced in the submission of the case on an erroneous theory; but even on that theory the charge was inaccurate and inadequate. In stating " we do not know what occurred, except that we do know that the plane was destroyed and this plaintiff [decedent] was killed," and then defining the *res ipsa loquitur* rule, the court ignored plaintiff's evidence and the reasonable inferences that might be drawn from it. While defendant's proof tended to establish that it furnished a sound plane, properly equipped, as well as an experienced pilot, the evidence was insufficient to explain why the pilot, despite the fact that there was no change in weather conditions, went fifty miles off his course and proceeded over dangerous territory and at an unsafe altitude. In my opinion the verdict was against the weight of the evidence, and the interests of justice require a new trial.

The judgment should be reversed on the law and a new trial granted, with costs to appellant to abide the event.

CARSWELL, ADEL and CLOSE, JJ., concur; HAGARTY, J., dissents and votes to affirm, with memorandum.

HAGARTY, J. (dissenting). I dissent and vote to affirm. This case went to the jury on the theory that the doctrine of *res ipsa loquitur* was solely applicable in accordance with a charge which although brief, was a correct exposition of that doctrine. The plaintiff did not request that the jury be charged that an inference of negligence might be drawn by them from the facts as distinguished from the presumption of law obtaining in a case governed by the doctrine of *res ipsa loquitur*. All requests to charge made by plaintiff were favorably passed upon and, by omitting to take an exception or to request a charge, the plaintiff acquiesced in and accepted the charge in its entirety. Even on the appeal here, appellant does not dispute the application of the doctrine of *res ipsa loquitur*, but, on the contrary, he invokes it; nor does he assert that the verdict was against the weight of the evidence. The

reversal is predicated upon a theory which has not been invoked by the appellant. It is the court's theory, and not that of the interested party, and is advanced after a trial in which the jury has exercised its functions after consideration of the issue as submitted to it under a charge which was accepted as the law of the case. In my opinion, this court has no such power. (*Galloway* v. *Erie Railroad Co.*, 116 App. Div. 777; affd., on opinion below, 192 N. Y. 545; *Silkman* v. *Schwartz*, 201 App. Div. 38; *Smith* v. *New York Anti-Saloon League*, 121 id. 600.)

Judgment reversed on the law and a new trial granted, with costs to appellant to abide the event.