PEERLESS CASUALTY COMPANY, Respondent, *v.* JOHN BORDI, Appellant.

Third Department, May 29, 1958.

22

*John T. De Graff, Michael Nardone* and *John T. De Graff, Jr.,* for appellant.

*Thomas J. Delaney* for respondent.

REYNOLDS, J. During the first week of June, 1954 plaintiff's agent predated and issued a policy of automobile insurance to defendant, the effective term of which was stated in the policy to run for one year from May 20, 1954. On May 29, 1954 the

defendant's vehicle, therein covered, was involved in a collision. After the accident, pursuant to the terms of the policy, the plaintiff paid a claim of defendant for collision damages to his automobile and undertook the defense of tort actions brought against him by third parties. As a result, however, of certain information which came to its attention in August, the plaintiff, in September, cancelled the policy by notice to defendant effective September 30, 1954. In November, 1954 it commenced this action.

The gist of the complaint is that the policy was applied for by the defendant and knowingly issued after the date of the accident by its agent for the purpose of perpetrating a fraud on the plaintiff. It alleges that the agent had no authority, express or implied, to issue this policy as he did, and that his act in this case was violative of and beyond the scope of his agency. The prayer demands a judgment *declaring* the policy to be null and void.

The answer admits that plaintiff's agent knew of the accident when he issued the policy, but denies the other allegations. It contains four so-called defenses and a counterclaim. The first defense alleges that defendant had been a customer of the agent for over ten years and that '' plaintiff '' had always renewed the defendant's policy prior to its expiration date (which is incorrect; this was a new policy; the agent had changed casualty companies) and that defendant had authorized the agent to renew the policy which expired just prior to the effective date of the one in dispute. The second defense alleges that plaintiff paid the collision loss in July and undertook the defense of the tort action in September, 1954. The third defense is to the effect that plaintiff did not return any part of the premium which the defendant paid for the policy and retained the premium for the period it was in effect, i.e., from May 20 to September 30, 1954. The fourth defense and counterclaim seeks to recover $2,500, as damages for the expense of defending the instant action, predicated on breach of contract by the plaintiff. This last defense and counterclaim was abandoned at the trial.

After a trial of the issues before a jury at a Trial Term of the Supreme Court the jury returned a negative answer to a question submitted in the form of a '' special verdict '', to wit, '' Was the policy risk in effect on May 20th, 1954? '' The court denied defendant's motion to set aside the verdict on the grounds set forth in section 549 of the Civil Practice Act and directed judgment for the plaintiff annulling the policy.

The pleadings in the action are difficult to interpret. The complaint does not seek a money judgment for the restitution of

the amount of the collision loss payment and does not offer to return or credit the amount of premium retained by the plaintiff upon its cancellation of the policy on September 20, 1954. It merely asks that the policy be declared null and void. It seems to be an action for a declaratory judgment, although the complaint does not follow the usual form in such an action.

The defendant has taken the position that it is a rescission action and contends that the complaint pleads facts which would entitle the plaintiff to rescission and argues that the plaintiff has not offered to make the defendant whole.

In any event, the plaintiff has proven by the defendant Bordi's alleged admissions that Bordi was told by Walter Donnaruma, the agent, that his policy had expired and was not in effect at the time the accident occurred, and, further, that Donnaruma would take care of the accident provided he, Bordi, gave the Donnaruma agency all of his insurance. There was evidence from which the jury could find that Bordi and Donnaruma committed a fraud on the plaintiff, but under the court's charge we have no way of safely determining what it did find.

There was no dispute that the policy was predated. The crux of the matter was whether, prior to May 20, 1954, there was written agreement to issue a policy. Exhibit B, the purported written agreement and authorization to write the policy in question, is undated. However, both Donnaruma and Bordi testified that it was entered into prior to May 20, 1954. If so, it constituted, in our opinion, a valid written agreement for coverage. If it was entered into subsequent to the accident, i. e., after May 29, 1954, the policy, of course, would not be in effect as of that date.

The charge with regard to Exhibit B, this vital piece of evidence, was insufficient in our view. Whether it constituted a binder or a written agreement for coverage was a question of law for the court. The court should have charged the legal effect of the exhibit. Then the court should have instructed the members of the jury that it was for them to decide from the evidence whether it (Exhibit B) was entered into before May 20, 1954, or whether it was prepared and signed after the accident by the defendant and Donnaruma. If the latter, then they should have been told they must find that the policy risk was not in effect on May 20, 1954. If the former, then it was a valid and binding agreement for coverage, and their answer to the special question would have to be " yes ".

Also, even though it may have been implicit in the charge, the court should have instructed the jury that the date and issuance of the policy did not determine the issue in the case.

Further, we cannot take judicial notice of the fact that this jury was composed of laymen who had experience in buying insurance, and knew that it was common and customary practice to bind coverage for liability insurance and then deliver the actual policies days or weeks later, as suggested by respondent in its brief. Nor can we believe that the jury, without being told, could possibly know the legal effect of a binder, oral or written, or a written agreement for coverage of a certain type, especially and specifically Exhibit B.

Since we are of the opinion that the jury was not properly instructed as to the material issue in this case we cannot allow the judgment to stand. Even though no exception was taken to the charge, its insufficiency upon so vital an issue becomes basic and fundamental. In such a case it is proper, in the interests of justice, to direct a new trial (*Nicotra* v. *John Hancock Mut. Life Ins. Co.*, 268 App. Div. 1004; *Devoy* v. *Irish World & Am. Ind. Lib. Co.*, 208 App. Div. 319; *Goodheart* v. *American Airlines*, 252 App. Div. 660).

In the event the plaintiff-respondent is successful upon a retrial, the trial court should adjust the equities pursuant to section 112-g of the Civil Practice Act.

The judgment and order appealed from should be reversed, the verdict set aside, and a new trial granted, with costs to appellant to abide the event.

FOSTER, P. J., BERGAN, COON and GIBSON, JJ., concur.

Judgment and order reversed and a new trial granted, with costs to appellant to abide the event.