Marguerite **CITROLA**, Individually, as Administratrix of the Estate John Citrola, Deceased, and as Next Friend of Richard John Citrola and Karen Jean Citrola, Infants, Plaintiff-Appellee,

v.

**EASTERN AIR LINES, INC.**, Defendant-Appellant.

No. 116, Docket 25169.

United States Court of Appeals Second Circuit.

Argued Jan. 14, 1959.

Decided March 19, 1959.

816

Robert F. Ewald, New York City (Bigham, Englar, Jones & Houston, New York City, on the brief), for defendant-appellant, John G. Reilly, Harold V. McCoy, New York City, of counsel.

Edward J. Sullivan, New York City, for plaintiff-appellee, Lee S. Kreindler, Harry E. Kreindler, New York City, Milton G. Sincoff, Brooklyn, N. Y., Jay R. Handwerger, New Rochelle, N. Y., Kreindler & Kreindler, New York City, of counsel.

Before MEDINA, LUMBARD and BURGER,* Circuit Judges.

BURGER, Circuit Judge.

At 3:43 a. m. on December 16, 1955, an Eastern Air Lines passenger plane crashed as it was making a so-called Instrument Landing System approach to Imeson Airport, Jacksonville, Florida. All aboard were killed. This is an action brought by the widow of one of the deceased under the Wrongful Death Act of the State of Florida. Fla.Stat.Ann. §§ 768.01, 768.02 (1958 Supp.).

It is not disputed that there was sufficient evidence to take the case to the jury, but the evidence from which negligence might be inferred was largely if not wholly circumstantial. It was stipulated that all equipment on the ground and in the plane was functioning properly, and the high intensity runway lights were turned on and in operation. The plane had been cleared for an instrument landing, with a weather report of visibility ½ mile, partial obscurement by fog, 300 foot indefinite ceiling, wind 8 m. p. h. The Civil Air Regulations and the pilot's Flight Operation Manual, which were introduced in evidence over appellant's objection, provided the proper standard of care under the circumstances, and the substance of the relevant portions of these documents is to the effect that the pilot was prohibited from de-

* Sitting by designation pursuant to 28 U.S.C.A. § 291(a).

scending below the prescribed glide path and the minimum altitude of 200 feet unless he could see where he was going. If conditions did not permit such observation, the pilot was required to execute a "missed approach procedure," fly up out of danger, and make a new approach.

There was testimony on the basis of which the jury might have found that in the vicinity of the crash there was ground fog down to the tops of the trees 60 to 75 feet high, that the plane was coming in at tree top level, and that the place of the crash was about ¾ of a mile from the runway, 200–300 feet to the left of the approach line.

■ We first affirm Judge Ryan's ruling admitting into evidence the testimony of the witnesses about the fog and the Regulations and Manual. He properly allowed the jury to consider all facts in their proper perspective and in relation to the standards and criteria set by the appropriate authorities and binding on appellant.

■ Appellant's principal contention concerns the instructions to the jury, urging as error that Judge Ryan gave the jury a *res ipsa loquitur* charge despite the fact that appellee had introduced evidence tending to show specific acts of negligence. It is clear that the *lex fori*, i. e., New York rather than Florida law controls the resolution of this issue. Lobel v. American Airlines, Inc., 2 Cir., 1951, 192 F.2d 217, certiorari denied 1952, 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703.

Appellant relies on language in some of the New York cases to support its position. For example: " 'Hence the presumption or inference arising from the doctrine [of *res ipsa*] cannot be availed of, or is overcome, where plaintiff has *full knowledge* and testifies as to the specific act of negligence which is the cause of the injury complained of.' " (Emphasis added.) Whitcher v. Board of Education, 1931, 233 App.Div. 184, 185, 251 N.Y.S. 611, 612–613, quoting 45 C.J. 1206; see Bressler v. New York Rapid Transit Corp., 1936, 270 N.Y. 409, 1 N.E.2d 828; Goodheart v. American

Airlines, Inc., 1937, 252 App.Div. 660, 1 N.Y.S.2d 288. Close analysis of the cases relied on by appellant shows they do not support its position. On the contrary, they not only support but almost compel the instructions given by Judge Ryan on *res ipsa loquitur*. See Lobel v. American Airlines, Inc., supra, 192 F.2d at pages 219–220, where this court said:

"We do not agree with defendant that it was error to submit the case to the jury on a *res ipsa loquitur* charge. In his pleadings and in proving his own case, plaintiff met the requirements of the doctrine. The plane was in defendant's exclusive control. The accident was not of the sort which happens in the ordinary course of events without negligence on someone's part. The defendant urges, however, that, by the time the case went to the jury, plaintiff had attempted to prove, and had argued in his summation, that the accident was caused by several specific acts of negligence on defendant's part * * * We can find no New York case which penalizes a *res ipsa loquitur* plaintiff who, on cross-examination, probes deeply into the defendant's behavior and thus discloses specific acts of negligence that may have caused the accident. We assume the New York courts would oppose any rule which encouraged plaintiffs to go easy on defendants in cross-examination and which destroyed this truth-testing technique in *res ipsa loquitur* cases, for the information elicited under cross-examination helps the jury to decide intelligently whether or not a permissible inference of negligence should be drawn." (Footnote omitted).

■ Under the New York law the doctrine of *res ipsa loquitur* essentially means that, "where the instrumentality which produced an injury is within the exclusive possession and control of the person charged with negligence, and such person has exclusive knowledge of the care exercised in the control and manage-

ment of that instrumentality, evidence of circumstances which show that the accident would not ordinarily have occurred without neglect of some duty owed to the plaintiff is sufficient to justify an inference of negligence and to shift the burden of explanation to the defendant. Slater v. Barnes, 1925, 241 N.Y. 284, 149 N.E. 859." Galbraith v. Busch, 1935, 267 N.Y. 230, 234, 196 N.E. 36, 38, quoted with approval in George Foltis, Inc. v. City of New York, 1941, 287 N.Y. 108, 114–115, 38 N.E.2d 455, 459, 153 A.L.R. 1122.

■ This means that, where these evidentiary requirements of *res ipsa* have been met, the triers of the facts may reasonably draw an inference that the occurrence was attributable to an unknown act or omission of the defendant. The strength or weakness of the inference will, of course, vary with the circumstances. If the plaintiff introduces evidence tending to prove a specific cause of the occurrence, naturally the strength of the possible inference that the occurrence was attributable to an *unknown* act of the defendant diminishes. If the cause claimed by the plaintiff is sufficiently probable, the jury will only be confused by an instruction that the occurrence itself suggests the defendant's negligence (by an unknown means). The plaintiff himself will probably not want the jury told that they may infer an unknown cause of the occurrence when he has produced strong proof of a known cause which involves defendant's liability. See Goodheart v. American Airlines, Inc., supra.

■ In the case at hand plaintiff's proof suggested that the crash might have been caused by the act of the pilot in flying too low in violation of regulations. While this may be one possible explanation of the crash, it is far from the only *probable* cause of the accident. For instance, the pilot may have completely lost control of the plane before it dipped below the allowable altitude.

Furthermore, the act of flying too low is but one of many links in the chain of causation. Appellant made the only attempt to show what caused the pilot to fly too low, and the jury was free to have disbelieved appellant's evidence concerning a jet plane which supposedly flew near the airliner and forced it down. Other possible explanations (about which there was no evidence) as to why the plane went too low might well involve appellant's negligence, the most likely being simple pilot error. *Res ipsa*, of course, if applicable, relieves the plaintiff of the burden of direct proof on this causal link.

Prosser says in relation to the problem that "it is quite generally agreed that the introduction of evidence which does not purport to furnish a *complete* explanation of the occurrence does not deprive the plaintiff of *res ipsa loquitur*." Prosser, Torts 214 (2d ed. 1955) (Emphasis added); see Annotation, Evidence of Specific Negligence as Affecting Reliance on Res Ipsa Loquitur, 33 A.L.R. 2d 791 (1954). This appears consistent with the New York cases.

Seaman v. Curtiss Flying Service, Inc., 1930, 231 App.Div. 867, 247 N.Y.S. 251, involved facts substantially similar to those here. In that case the Appellate Division ordered a new trial on other grounds and said that the trial court's failure to give a *res ipsa* charge was error because the doctrine had "application to this case as a rule of evidence to aid the jury in passing upon the issue of liability." 231 App.Div. at page 868, 247 N.Y.S. at page 253; cf. Trihey v. Transocean Air Lines, Inc., 9 Cir., 255 F.2d 824, certiorari denied, 1958, 358 U.S. 838, 79 S.Ct. 62, 3 L.Ed.2d 74.

Appellant argues that the Seaman case has been overruled *sub silentio* by Goodheart v. American Airlines, Inc., supra. In the Goodheart case, [252 App. Div. 660, 1 N.Y.S.2d 291] however, despite evidence that the defendant's pilot deviated from his prescribed course and, by reason of his shortcut, hit the side of a mountain, the trial court made no reference to this specific proof of negligence, but submitted the case to the jury on a *res ipsa* charge and a statement "We do not know what occurred," and

the jury, necessarily confused by this procedure, found a verdict for the defendant. The Appellate Division reversed on the ground that, in these circumstances, the *res ipsa* charge tended to becloud plaintiff's evidence of a specific act of negligence and to confuse the jury.

Read together, the Seaman and Goodheart cases spell out not a prohibition against charging the jury on two theories of negligence but a policy of giving instructions which will avoid confusion. Appellant's brief, on the other hand, speaks in terms of whether plaintiff was "entitled" to the "benefit" of the charge, rather than of any confusion that it might engender. One can readily understand appellant's reluctance to assume the burden of showing that Judge Ryan's cogent instructions could tend to confuse any reasonable juror. With respect to the evidence of specific negligence he told the jury:

> "If you find that the defendant violated any of these regulations then such violation may be considered by you as some evidence of negligence on the part of the defendant * * * "

Additionally, he instructed them:

> "[Y]ou may infer from the very happening of the crash, since it was not an ordinary event happening in the course of a normal Instrument Landing System approach, that the crash was occasioned by some negligent act of the operators of the airplane. It is an inference you may draw but you are not required to draw from such findings.
>
> "The fact that the law permits you to draw this inference * * * does not shift the ultimate burden of proof to the defendant in any way, not even the burden of offering an explanation as to how or why the crash occurred; the burden still rests with the plaintiff of establish-

ing to your satisfaction by a preponderance of the evidence that the negligence of the defendant was the substantial factor contributing to causing the crash."

His charge makes plain that the jury might believe that defendant's violation of the regulations caused the crash and so find defendant liable, *or* that the jury might believe that some other and *unknown* act of negligence on the part of defendant caused the accident. Should this court hold that such a charge is erroneous, plaintiffs in the future would hesitate to introduce whatever evidence they might have available as to the cause of injury for fear that thereby they would be deprived of an otherwise appropriate *res ipsa* charge. Such a rule would, as this court pointed out in Lobel v. American Airlines, Inc., supra, operate to "penalize a *res ipsa loquitur* plaintiff who * * * probes deeply into the defendant's behavior and thus discloses specific acts of negligence that *may* have caused the accident." 192 F.2d at page 220 (Emphasis added).

Appellant relies heavily on Holtfoth v. Rochester General Hospital, 1952, 304 N.Y. 27, 105 N.E.2d 610, 31 A.L.R.2d 1113. There, however, the instrumentality which caused the injury, a wheel chair leg support, was not in the exclusive control of the defendant.[1]

▮ The determining factor in framing the instruction in a case where there is exclusive control in the defendant is whether the claimant presents what purports to be a complete explanation of the proximate cause of the occurrence. If he does, it would simply confuse a jury to present them with a choice between claimant's asserted theory and explanation and a *res ipsa loquitur* theory. If plaintiff's theory and proof purport to explain fully the cause there is no occasion to go beyond that theory. Here appellee presented but one of a number

1. Scott v. City of New York, 1956, 2 A.D. 2d 854, 155 N.Y.S.2d 787, appeal allowed 1957, 3 N.Y.2d 930, 167 N.Y.S.2d 949, 145 N.E.2d 888, and Finn v. Pennsylvania R. Co., 1958, 6 A.D.2d 813, 175 N.Y.S.2d 425, may also be distinguished on the ground that there the instrumentality of the injury was not in the exclusive possession and control of the defendant.

of possible explanations, and indeed the only explanation within his reach in the circumstances. To penalize him for this minimal proffer by denying the highly appropriate *res ipsa loquitur* instruction would indeed be a hardship.

The other cases cited by appellant [2] do not involve reliance on inferences growing out of possible but unknown causes of the occurrence and our present holding is not in conflict with those cases. We hold it was not error for the District Judge to instruct the jury in the manner set forth above (264 F.2d 819, supra).

The proffer of some evidence, such as the pertinent safety regulations and testimony as to the physical facts of visibility do not preclude an instruction on *res ipsa loquitur* if that instruction is otherwise appropriate as it was here. The instructions given clearly presented the fact finders with three possible verdicts, each mutually exclusive of the others, as to the cause of the crash: that it was caused (1) by factors outside the control of the operators, thus absolving them of liability, or (2) by negligent violation of safety regulations, or (3) by factors of negligence unknown but within the exclusive control of the operators. This charge was in no way confusing, and on the record before us was correct.

Appellant also argues that the District Court misinterpreted the Florida Wrongful Death Act on the issue of standing to sue,[3] that consequently his charge on damages was erroneous, that the verdict and judgment awarding $105,000 to the widow plus $10,000 to each of the two surviving minor children is erroneous, and that the entire judgment must be set aside and a new trial ordered.

We hold that the Florida statute must be construed to mean that the widow is the only person entitled to sue in this case, and that her only right of action is one in her own capacity, not as representative of the children, nor as executrix or administratrix of her husband's estate. Ellis v. Brown, Fla.1955, 77 So.2d 845, 849 (dictum); Florida Central & Peninsular R. Co. v. Foxworth, 1899, 41 Fla. 1, 70, 25 So. 338, 347 (dictum). Therefore the two children may not separately recover damages for their father's death.

2. Bressler v. New York Rapid Transit Corp., supra, 1936, 270 N.Y. 409, 1 N.E. 2d 828; Bailey v. Bethlehem Steel Co., 1950, 277 App.Div. 798, 97 N.Y.S.2d 632, affirmed 1951, 302 N.Y. 717, 98 N.E.2d 589; Metropolitan Life Ins. Co. v. Rochester Gas & Elec. Corp., 1946, 271 App. Div. 367, 65 N.Y.S.2d 560; Swiontek v. City of New York, Sup., 1951, 108 N.Y.S. 2d 844, affirmed 1954, 283 App.Div. 949, 130 N.Y.S.2d 882.

3. F.S.A. § 768.02 (1944):
"Every such action shall be brought by and in the name of the widow or husband, as the case may be, and where there is neither widow nor husband surviving the deceased, then the minor child or children may maintain an action; and where there is neither widow nor husband, nor minor child or children, then the action may be maintained by any person or persons dependent on such person killed for a support; and where there is neither of the above classes of persons to sue, then the action may be maintained by the executor or administrator, as the case may be, of the person killed.

In case of the death of any person solely entitled, or of all the persons jointly entitled to sue, before action brought or before the recovery of a final judgment in action brought by him or them, the right of action or the action as the case may be, shall survive to the person or persons next entitled to sue under this section, and in case of the death of one or more persons jointly entitled to sue before action brought or before the recovery of a final judgment in an action brought by them, the right of action or the action, as the case may be, shall survive to the survivor of such persons so jointly entitled to sue; and in every such action the jury shall give such damages as the party or parties entitled to sue may have sustained by reason of the death of the party killed; provided, that any person or persons to whom a right of action may survive under the provisions of this act shall recover such damages as by law such person or persons are entitled in their own right to recover, irrespective of the damages recoverable by the person or persons whom he or they may succeed."

We do not agree with appellant that the error requires reversing the judgment and ordering "the monstrous penalty of a new trial." 1 Wigmore Evidence § 21 at 395 (3d ed. 1940). Judge Ryan's instructions adequately distinguished the various elements of damages, and the verdicts rendered were separate and severable. The error can be corrected by modification of the judgment, deleting the two $10,000 awards to the two children.

Judgment affirmed as modified.