Santiago N. CASTRO, Plaintiff-Appellant,

v.

MOORE–McCORMACK LINES, INC., Defendant-Appellee.

No. 126, Docket 28373.

United States Court of Appeals Second Circuit.

Argued Oct. 17, 1963.

Decided Nov. 18, 1963.

T. Lawrence Tabak, New York City (Sheldon Tabak, New York City, on the brief), for plaintiff-appellant.

John H. Reilly, Jr., New York City (W. Mahlon Dickerson and Browne, Hyde & Dickerson, New York City, on the brief), for defendant-appellee.

Before MEDINA, HAYS and MARSHALL, Circuit Judges.

MEDINA, Circuit Judge.

On January 22, 1961 Santiago N. Castro, an assistant pantryman aboard the S.S. Brasil, a passenger vessel owned and operated by defendant Moore-McCormack Lines, Inc., was cleaning a stainless steel toaster in the promenade deck pantry. While he was removing the dried paste made of the cleaning powder furnished by the shipowner "the wind blowing in through the open prom-

enade doors, coupled with the motion of the cleaning rag, caused the dried particles to fall on his face and his eyes." Some of these particles caused the injuries to his eyes for which he seeks recovery in damages in this suit brought under the Jones Act, 46 U.S.C. § 688. The claims are in the usual triple aspect, negligence, unseaworthiness of the vessel, and maintenance and cure. There was another count based on alleged failure of the shipowner to give proper medical treatment; but this was dismissed at the close of the evidence for failure of proof. As Castro apparently waived a jury trial, the case was tried to the judge alone, and, after reserving decision and having given the case consideration, he dismissed the complaint on the merits, finding no negligence and no unseaworthiness. Castro, who was working at the same job on the same vessel at the time of the trial, appeals. The allowance for maintenance and cure is not in dispute and we shall not mention it again. The findings and opinion below are not reported.

The facts as found by Judge Cooper may be briefly stated. The toaster was a tall revolving type which stood on a counter, near the door or doors leading to the promenade deck. The cleaning powder was "Elenite Copper and Stainless Steel Cleaner." Its ingredients were

the same as those "found in many commonly used household cleaners," silica, citric acid, common salt and a wetting agent. The chief utility man put some of this cleaning powder in a bag, after taking it from a small cardboard barrel and gave it to Castro, who had never used Elenite cleaning powder before, with the following instructions:

"Q. And what were these instructions? A. His instructions was to get this powder, put it on the pot, mix it up with cold water, make a paste out of that, and apply to whatever I am going to clean.

"Q. Any other instructions? A. That is all the instructions I got.

"Q. Mix it with cold water, make a paste and apply it? A. Yes, sir.

"Q. What about getting it off? Were there any instructions with regard to that? A. Yes, sir. He give me instructions to get a clean rag and wipe it off from the toaster or whichever place I use it."

The Bulletin of instructions delivered by the manufacturer of the cleaning powder to the shipowner, describing the manner of its use, is set forth in the margin.[1]

Castro made the paste and put it on the toaster. He then waited about an hour and a half to permit it to dry, and

---

[1] "CLEANING STAINLESS STEEL TABLE TOPS AND REFRIGERATOR DOORS WITH ELENITE COPPER AND STAINLESS STEEL CLEANER
*PREPARATION FOR CLEANING*
1. MAKE A SOFT 'MUD-THICK' PASTE OF ELENITE COPPER AND STAINLESS STEEL CLEANER BY ADDING A LITTLE WATER TO THE POWDER IN AN OLD PAN OR OTHER SHALLOW CONTAINER.
2. PREPARE A PAIL OF *CLEAN* WARM OR HOT WATER WITH A *CLEAN* CLOTH OR SPONGE. ALSO PREPARE SOME *CLEAN* DRY CLOTHS FOR WIPING SURFACE DRY.
* * *
*FIRST*—CLEAN THE STAINLESS STEEL SURFACE WITH A SOFT BRUSH OR CLOTH DIPPED IN-

TO THE 'MUD-THICK' PASTE OF ELENITE, RUBBING IN THE SAME DIRECTION.
*THEN*—RINSE *THOROUGHLY* USING SEPARATE CLOTH OR SPONGE AND PLENTY OF CLEAN WATER.
*FINALLY*—WHILE STILL WET, WIPE THE SURFACE DRY WITH A *CLEAN DRY CLOTH*.
*NOTE:* IF WHITE STREAKS APPEAR WHEN SURFACE IS DRY, IT MEANS THAT (A) SURFACE WAS NOT RINSED THOROUGHLY ENOUGH OR (B) RINSE WATER AND RINSE CLOTH ARE NOT CLEAN OR (C) THE DRY, POLISHING CLOTH IS NOT CLEAN.
SOME WORKERS PREFER TO USE RUBBER GLOVES FOR SUCH CLEANING."

finally began wiping off the toaster, with the wind blowing in from the promenade deck. He "had to stretch upwards so as to reach the top of the toaster." As he started to wipe off the toaster the wind blew the particles of dried cleaning powder about and some of them got in Castro's eyes. His counsel insists that he testified that he was told to "allow it to dry" before wiping, but there is no such testimony, nor did the trial judge make any such finding.

■ Was the vessel unseaworthy? This is not a jury case. The somewhat extravagant allegations of inadequate and improper equipment and materials and incompetent officers and crew of the vessel find no support in the proofs. The ingredients of the cleaning powder were the same as found in other cleaning powders used to clean pots and pans and the other articles cleaned by appellant, such as coffee urns, the ice-box, the steam table and the toaster. There was nothing defective about the vessel or the cleaning powder.

■■ The trial judge, citing Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941, correctly and explicitly stated that the proper standard for seaworthiness is "one of reasonable fitness." True it is that the liability for unseaworthiness is absolute and quite independent of fault on the part of the shipowner. But we have here no confusion caused by misapplication of concepts of common law negligence to a claim of unseaworthiness. We are at a loss to see any basis for setting aside the finding of seaworthiness as clearly erroneous. If the case had been tried to a judge and jury, and the jury had rendered a verdict for defendant on the issue of unseaworthiness, on proper instructions, we would have had no alternative other than to affirm the judgment entered on the verdict. Blier v. United States Lines Company, 2 Cir., 1961, 286 F.2d 920, cert. denied, 368 U.S. 836, 82 S.Ct. 32, 7 L.Ed.2d 37. Surely we are not to hold that a jury verdict on such a question is entitled to more weight than the finding of a judge who has demon-

strated that he was applying the governing legal standard. See Morales v. City of Galveston, 1962, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412. We find nothing to the contrary in Grillea v. United States, 2 Cir., 1956, 232 F.2d 919, or the other cases cited by appellant. Nor are we called upon to speculate on the sufficiency of the evidence to support a finding of unseaworthiness, had such a finding been made on this record.

■ We turn to the negligence count. The findings of fact and conclusions of law in the opinion below distinctly raise and resolve in the context of this case the issues determinative of the negligence claim. Despite allegations by appellant that the cleaning powder was composed of "dangerous, hazardous and improper chemical" substances, the undisputed evidence supports the finding that it was not "in any way dangerous or hazardous," and that the shipowner had no notice nor could it in the exercise of reasonable care have known that the cleaning powder would cause injury. Indeed, one of the witnesses testified that, in the thirty years during which the manufacturer had produced the powder, according to the same formula, there had been no complaint that anyone had been injured by it.

If it be argued that the shipowner should have instructed Castro specifically to wipe off the paste while it was wet, there are several answers. The directions in the Bulletin with respect to wiping seem plainly designed not as protection for the person using the cleaning powder but rather for the purpose of cleaning the stainless steel in the most effective manner. Moreover, the suggestion that some persons might prefer to use rubber gloves can have no possible bearing on particles of cleaning powder being blown about by the wind so as to lodge in a person's eyes. In any event, all inferences are for the trier of the facts. While the trial judge appears to have given credit to Castro's description of how the particles of powder got in his eyes, this does not mean that he necessarily believed every detail of Castro's

testimony. The whole congeries of evidentiary details and inferences disclosed by the transcript of the trial present the typical combination relative to alleged negligence that is submitted to judges and juries every day.

While plaintiffs may be disappointed now and then in the result, the law must apply the same rules whether the finding is one of negligence, in favor of a plaintiff, or one of no negligence, in favor of a defendant, as in this case. Surely, on the record now before us, plaintiff would not have been entitled to the direction of a verdict in his favor on the issue of liability, had the case been tried to a judge and jury.

Thus, even if we assume *arguendo* that Castro made out a *prima facie* case of negligence, which is far from clear, the finding that he had failed to prove his allegations of negligence "by a fair preponderance of the credible evidence" must stand.

There is nothing to the contrary in any of the cases cited by appellant. In Ferguson v. Moore-McCormack Lines, 1957, 352 U.S. 521, 77 S.Ct. 459, 1 L.Ed.2d 515, there was a jury verdict for plaintiff. We reversed on the ground that there was no evidence of negligence and that defendant's motion for a directed verdict should have been granted. The Supreme Court held the case was properly submitted to the jury and reversed. In Hardy v. Procter & Gamble Mfg. Co., 5 Cir., 1954, 209 F.2d 124, the trial judge directed a verdict for defendant and the Fifth Circuit held the case should have been submitted to the jury. In Wright v. Carter Products, Inc., 2 Cir., 1957, 244 F.2d 53, we reversed because the trial judge had applied an erroneous test in determining the liability of the manufacturer of a product advertised as "safe," "harmless," and "would not irritate the skin." By way of contrast, the Sixth Circuit affirmed a judgment entered on a jury verdict for plaintiff in Keymon v. Tennessee Towing Company, 6 Cir., 1961, 296 F.2d 785, where plaintiff suffered serious injuries by being burned by "a powerful alkaline detergent having the burning propensities of caustic soda."

We are mindful of the fact that cases of seamen under the Jones Act as well as those arising under FELA are to be viewed with a liberality consistent with the beneficent and salutary purposes that underlie these two most desirable pieces of Federal legislation. But plaintiffs cannot always win.

We are also mindful of the many rulings to the effect that conclusory findings of a trial judge on such subjects as unseaworthiness and negligence in a nonjury trial involve the determination of mixed questions of law and fact freely reviewable on appeal and not subject in the normal sense to the clearly erroneous limitation. Kane v. Branch Motor Express Company, 2 Cir., 1961, 290 F.2d 503; Romero v. Garcia & Diaz, Inc., 2 Cir., 1961, 286 F.2d 347, cert. denied, 365 U.S. 869, 81 S.Ct. 905, 5 L.Ed.2d 860; Great Atlantic & Pacific Tea Co. v. Lloyd Brasileiro, 2 Cir., 1947, 159 F.2d 661, cert. denied, 331 U.S. 836, 67 S.Ct. 1519, 91 L.Ed. 1849; Sidney Blumenthal & Co. v. Atlantic Coast Line R. Co., 1943, 2 Cir., 139 F.2d 288, cert. denied, 1944, 321 U.S. 795, 64 S.Ct. 848, 88 L.Ed. 1084. On the other hand, in this same category of cases, numerous decisions, in our own Court and in others as well, review similar findings by applying the clearly erroneous rule. Morales v. City of Galveston, 1962, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412; McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; Staples v. Ace Builders Supply Co., 2 Cir., 1959, 262 F.2d 295; Ferguson v. Post, 2 Cir., 1957, 243 F.2d 144; Pacific Tow Boat Company v. States Marine Corporation of Delaware, 9 Cir., 1960, 276 F.2d 745, 752; Imperial Oil, Ltd. v. Drlik, 6 Cir., 1956, 234 F.2d 4, 10, cert. denied, 352 U.S. 941, 77 S.Ct. 261, 1 L.Ed. 2d 236. There is no real inconsistency, we think. It is merely a question of separating the legal from the factual elements involved in the conclusory statements where these involve a mixture of law and fact. Thus, as is implicit in what we have already said in this opinion, if

the trial judge, in assaying the proofs, including questions of credibility and the drawing of inferences of fact, can be shown to have arrived at his conclusory findings by a misapplication of the law, we must set aside the findings thus made. The reason for this is that findings by a judge based upon a misapplication of the law are in the same category as the verdict of a jury based upon erroneous instructions. Here there is internal evidence, as above explained, that Judge Cooper made no misapplication of the law in arriving at his factual conclusions. On the contrary, both with respect to unseaworthiness and negligence he used the proper standard.

We find it not necessary to discuss the uncontradicted evidence clearly supporting the dismissal of the third count for failure of proof. The medication provided by the shipowner was in every way adequate and proper.

Affirmed.