**John T. OLAH, Appellant,**

**v.**

**S.S. JALADURGA, her engines, boilers, etc., and Scindia Steam Navigation Co., Ltd., in rem, Moon Engineering Company, Incorporated, Appellees.**

**No. 9685.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 8, 1965.

Decided March 3, 1965.

L. S. Parsons, Jr., and Edwin J. Rafal, Norfolk, Va., for appellant.

Walter B. Martin, Jr., Norfolk, Va. (Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and BRYAN and BELL, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

For the pain and injuries he suffered when the roller of a hatch cover passed over his fingers, John T. Olah libeled the S. S. Jaladurga and her owners, alleging that the misfortune was due to the negligence of certain of the ship's crewmen. The admiralty judge dismissed the libel, concluding that there was no negligence on the part of the respondents. In this he erred.

With an exception of no present import, the evidential facts are not in conflict. Libelant Olah, an employee of a shipyard,

was engaged in removing bolts from a deep tank top lying on the starboard side of Jaladurga's main deck. Lifted out of No. 4 hold, the top lay about two feet from the edge of the coaming of the hatch of the hold. Olah was facing the bow, in a crouched posture with his head below the level of the coaming. The hatch cover moved on rollers and was opened by the draw of a winch, located sternward of the hatch. As he faced, Olah could not see the winch operator. With his father as foreman, he worked in a gang of three men. One was to his right on the opposite side of the top; the third was in front of him applying a torch to the bolts to aid Olah and his other companion in loosening them. The torchman was facing towards the stern and the winch.

The hatch cover had been closed earlier to prevent sparks from falling into the hold. A cadet, acting as deck officer for the ship, states that he informed Olah Sr. that the hatch would be opened about ten minutes before the disastrous movement was begun. This is denied by the foreman, who says he had no forewarning of the proposed opening. The crew were Hindus, speaking only Hindustani. It was not understood by any of the shipyard workmen, but the cadet conversed in English and was the liaison between the ship and the repairmen.

Olah Jr. was in clear view of the winchman as he set his machine in motion to open the hatch cover. Just before the start, the boatswain of the vessel, known as the serang, shouted "cabadar" which to the Indian crew meant to stand clear and be careful. No other alert was given Olah. As his work required him to squat, libelant Olah necessarily had to stand upright from time to time to get relief from the cramped position. He was in the course of doing so when injured. To steady himself in arising, Olah reached to his left and caught hold of the coaming just as the cover began to move. From the starting point it had only to travel a few inches before coming to where his fingers rested. It moved noiselessly and passed over his fingers.

The District Judge held that Olah's sudden rise and placing of his hand on the coaming was not reasonably foreseeable by the crewmen, and thus the movement of the cover towards Olah and without warning was not negligence. This view was based on the fact that Olah was more than a foot from the hatch, and hence not in a location of apparent peril.

With this we cannot agree. His place of work was in the area of danger. Moreover, his physical attitude indicated that he might change his posture frequently and momentarily. These circumstances were obvious both to the serang and winchman. Indeed, the shout of "cabadar" confesses the jeopardy of those near the hatch cover.

■■ As invitees upon the vessel, the repairmen were due the protection of ordinary care by the ship for their safety. Kermerac v. Compagnie General Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). This duty the ship neglected by her failure to warn Olah of the imminence and risk of injury.

■■ Our decision does not trespass upon the rule, recognized in admiralty, against the disturbance of findings of the trial judge unless clearly erroneous. McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954), modification denied, 348 U.S. 957, 75 S.Ct. 447, 99 L.Ed. 748. Without the slightest variation the subordinate findings of the District Court have presently been accepted. Whether they manifest negligence—here an omission—is a question of law, for the factual foundation has been fully and finally settled and it is no longer further dependent upon a choice of factual inferences. Castro v. Moore-McCormack Lines, Inc., 325 F.2d 72 (2 Cir. 1963); Gediman v. Anheuser Busch, Inc., 299 F.2d 537, 547 (2 Cir. 1962); Automotive Devices Co. v. Automotive Devices Co. of Pa., 292 F.2d 663 (3 Cir. 1961); Green v. Bluff Creek Oil Co., 287 F.2d 66 (5 Cir. 1961); Romero v. Garcia & Diaz, Inc., 286 F.2d 347, 355 (2 Cir. 1961) cert. denied, 365 U.S. 869, 81 S.Ct. 905, 5 L.Ed.2d 860; Great Atlantic & Pacific Tea Co. v. Brasileiro, 159 F.

2d 661, 665 (2 Cir. 1947). On a matter of law we may and must apply an independent judgment.

■ Of course, when an ultimate conclusion is to be drawn from evidentiary facts already agreed or found, but the answer is also dependent upon a selection of factual inferences which are reasonably deducible from the underlying facts, the conclusion is one of fact. Castro v. Moore-McCormack Lines, Inc., supra, 325 F.2d 72, 75. In that event the conclusion is secured by the "clearly erroneous" precept. McAllister v. United States, supra, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20. But even when measured by that yardstick, the judgment here cannot stand for "on the entire evidence [this court] is left with the definite and firm conviction that a mistake has been committed". McAllister v. United States, supra, 348 U.S. 19, 20, 75 S.Ct. 6, 8.

Accordingly, we must vacate the decree of dismissal. As the findings disclose no basis for the imputation of contributory negligence, we remand the case for entry of an interlocutory decree declaring the liability of the respondents, for the ascertainment of damages and for any further proceedings the District Court may deem necessary or appropriate.

Reversed and remanded.