**Delores Mae OLSEN, as Administratrix of the Estate of George Olsen, deceased, Appellant,**

v.

**STATES LINE, a foreign corporation, Appellee.**

**No. 20570.**

United States Court of Appeals Ninth Circuit.

May 29, 1967.

---

5. The defendant nevertheless prevailed on another ground.

John D. Spellman, Kane & Spellman, Seattle, Wash., for appellant.

Robert V. Holland, Bogle, Gates, Dobrin, Wakefield & Long, Seattle, Wash., for appellee.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

Appellant, Delores Mae Olsen, is the widow and administratrix of the estate of her deceased husband, George. She brought this negligence action under the Jones Act, 46 U.S.C. § 688, against States Line seeking damages for the wrongful death of her husband who was injured in an accident occurring on one of its ships, the SS OREGON. The jury returned a verdict against her; this appeal followed.

On the morning of April 7, 1964, the SS OREGON was being docked in Kobe, Japan. As part of the docking procedure George Olsen, a seaman, was charged with the task of taking up the slack in the mooring line[1] after it had been passed around the drum of the capstan.[2] While Olsen was thus engaged the line suddenly spun off the capstan throwing him into the air and against the deck with such great force that he was severely injured and died shortly afterwards.[3]

Appellant contended that the accident was wholly caused by States' negligence. She alleged negligence generally and also specifically alleged that States failed to properly supervise the hauling in of the forward landing line; ordered Olsen to haul in the line when it was unsafe to do so; and failed to detect or take steps to remedy the obvious danger resulting from strain on the line. States denied that it was negligent and by way of affirmative defense asserted that the accident was solely and proximately caused by Olsen's own negligence.

The only evidence concerning the accident itself was given by Hans Moller, a seaman, and Gordon Provencher, the chief mate.

Moller testified to the effect that while he and Olsen were engaged in heaving in the line it had become extremely taut; that he, Moller, considered the line so tight that he refused to stop it off as the chief mate directed;[4] that the mate nevertheless ordered the men continue; that the strain became so strong that the line jumped off the capstan and Olsen was jerked from beneath and thrown to the deck.

Moller also testified in substance that under these circumstances he would not have given the order to continue heaving in and that, in his opinion, the capstan ought to have been reversed and the line slacked off. However, he acknowledged that to dock a vessel the line had to be taut, that the procedure being followed at the time of the accident was consistent with that used in an ordinary docking operation and that, as a general rule, whether or not a line was too taut was a matter for the chief mate to decide.

Provencher testified that he was in charge of the docking operation and gave orders to the men when to put the lines out and when to heave in, but that he did not recall giving an order to put on a stopper; he stated that he was standing on the forecastle head on the port side and that, because his attention was temporarily directed to the port towards the pier, he did not see the accident. He nevertheless declared that in his judgment the line was not excessively taut; that standard procedures were being followed and that he had never heard of a line jumping the capstan. He was unable to account for what happened.

1. This starboard head line had been made fast to the pier on the port side of the vessel. It traveled from the pier, through the port chock, across the bow to the starboard chock, aft through the starboard bitts to the starboard capstan.

2. A capstan resembles a big steel spool about three feet high and two to three feet in diameter. After the line is passed around the drum of the capstan, the person operating the capstan controls (in this case the ship's carpenter) causes the drum to revolve thus pulling in the line forcing the ship to come alongside.

3. Olsen was standing on the starboard side of the forecastle head approximately five feet from the starboard capstan from which the line jumped. He had been putting pressure on the line to keep it taut.

4. A stopper is a smaller piece of line used to hold the principal line in place temporarily.

Appellant argues that on this evidence the district court should have instructed the jury on res ipsa loquitur, pursuant to her request. We agree.

■ It is well settled that the doctrine is applicable if: (1) the event is of a type which ordinarily does not happen in the absence of someone's negligence; (2) the instrumentality causing the injury was, at the time of the accident, within the exclusive control of the defendant; and (3) the accident was not due to any voluntary action or contribution on the part of the plaintiff.

■ In the case at bar, what occurred was sufficiently unusual to support an inference that, in the absence of negligence by those in charge, the line would not have jumped. At any rate we "cannot say that the jury could not reasonably come to that conclusion." Prosser, Torts 222 (3d ed. 1964). In addition, since the docking operation was within the exclusive control of appellee's agents at all relevant times, it is highly likely that appellee was "responsible for all reasonably probable causes to which the accident could be attributed." Id. at 233. Finally, even though a jury might find the decedent guilty of contributory fault, it need not do so and if it chooses not to, then the doctrine is not barred. See Jesionowski v. Boston & Maine Railroad, 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416 (1947); Prosser, Torts 229 (3d ed. 1964).

■ But appellee contends that appellant's attempts to prove specific acts of negligence bar reliance on the doctrine of res ipsa loquitur. In this circuit, res ipsa is properly applied even though a plaintiff attempts to prove exactly what happened [Furness, Withy & Co. v. Carter, 281 F.2d 264, 1 A.L.R.3d 636 (9th Cir. 1960). See also Weigand v. Pennsylvania Railroad Co., 267 F.2d 281 (3d Cir. 1959); Ozark v. Wichita Manor, Inc., 258 F.2d 805 (5th Cir. 1958)], the reason being that the evidence tending to show specific acts of negligence does not necessarily furnish a full and complete explanation of the occurrence. See Citrola v. Eastern Air Lines, Inc., 264 F.2d 815 (2d Cir. 1959); Prosser, Torts 237 (3d ed. 1964).

Here, Moller's testimony was that the accident was caused by heaving in the line after it became too taut. The person responsible may have been the chief mate (who was in charge of the operation), the boatswain (who relayed the orders) or the ship's carpenter (who operated the capstan controls). Appellee argues that the cause of the accident was thus conclusively established; that it consisted of an error in judgment by one of these three men and that the jury has obviously determined that the decision to continue heaving in the line was, under the circumstances, non-negligent.

We disagree. True, the accident might have resulted from a non-negligent error in judgment. But the jury might also have chosen to believe that "some other and *unknown* act of negligence on the part of defendant caused the accident." Citrola v. Eastern Air Lines, Inc., 264 F.2d 815, 819 (2d Cir. 1959) (Emphasis by the court). The evidence presented did not necessarily tell the whole story; it is not so persuasive as to warrant a conclusion as a matter of law that the accident could not have been caused by some other act or omission.[5]

Where, as here, the evidence admits of gaps "the triers of the facts may reasonably draw an inference that the occurrence was attributable to an unknown act or omission of the defendant." Id. at 818.

■ The court's refusal to give the requested instruction was prejudicial error for the jury, although concluding that the evidence failed to establish any of the specified acts of negligence might, if fully instructed pursuant to the request, have nevertheless found appellee

5. For example, the accident could have been caused by the use of a highly elasticized polyethylene line or by the height of the chocks in comparison to the capstan.

negligent on some other unspecified ground.

■ Appellant additionally assigns as error the trial court's refusal to instruct the jury that appellee owed decedent a duty to supervise the work.[6] The trial court did mention the proposition, but without comment, when outlining to the jury appellant's contentions and instructed the jury at length concerning the general elements of negligence.

■ Ordinarily, where the general instructions are sufficiently broad to enable the jury to fully understand the law of the case, more specific instructions need not be given. However, where as here a more specific instruction is requested, it is better practice to supplement the general instructions for the further enlightenment of the jury.

■ Appellant's next assignment relates to the trial court's charge to the jury with respect to proximate cause. Appellant contends that the court's instruction merely gives the general definition of proximate cause [7] and does not take into account the doctrine of comparative negligence applicable in cases arising under the Jones Act.

Standing alone, this instruction was erroneous since "the statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or *in part*' to its negligence." Rogers v. Missouri Pac. Railroad Co., 352 U.S. 500, 507, 77 S.Ct. 443, 449, 1 L.Ed.2d 493 (1957) (Emphasis by the court).

See also Page v. St. Louis Southwestern Railway Co., 312 F.2d 84, 98 A.L.R.2d 639 (5th Cir. 1963); DeLima v. Trinidad Corp., 302 F.2d 585 (2d Cir. 1962). But the instruction was accompanied by other specific ones which included the missing portion and, when read as part · of the whole, the error was cured. Cf. Unto v. Moore-McCormack Lines, Inc., 293 F.2d 26 (3d Cir. 1961).

Appellant nevertheless urges that this error could not be cured because the later instructions were "at best * * * likely to leave the jury highly confused, that alone being grounds for reversal." De-Lima v. Trinidad Corp., supra, 302 F.2d at 587. But in the *DeLima* case, "the erroneous instruction was given in a critical portion of the instructions. The reference * * * was not made in the abstract discussion of the law but occurred when the trial judge was * * explaining to the jury precisely what plaintiff had to prove to recover * * " *Ibid.* In this case the exact converse is true. The error occurred in the general definition of terms, not in the specific application of those terms to the facts at hand. Thus, we cannot say that appellant was prejudiced by the error.

Appellant's other assignments of error have been examined but none have merit or are of sufficient substance to warrant discussion.

The judgment is reversed and the cause is remanded with directions to grant appellant a new trial.

6. The owner of a vessel has a clear duty to supervise the work of a seaman under his command. In addition he must warn the seaman of all impending dangers of which he is, or should be, aware. See Olah v. S.S. Jaladurga, 343 F.2d 457 (4th Cir. 1965); cf. Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 503, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). Of course, the shipowner is chargeable with the knowledge, or lack of knowledge, of his employees.

7. The instruction was as follows:
    "Now, as used in these instructions the term 'proximate cause' means that cause which in a direct, unbroken sequence produces the injury complained of and without which such injury would not have happened."