**SCINDIA STEAM NAVIGATION CO.,**
Ltd., Appellant,

v.

**MOON ENGINEERING COMPANY,**
Incorporated, Appellee.

No. 10321.

United States Court of Appeals
Fourth Circuit.

Argued May 4, 1966.

Decided June 21, 1967.

Walter B. Martin, Jr., Norfolk, Va. (Vandeventer, Black, Meredith & Martin, Norfolk, Va., on the brief), for appellant.

William B. Eley, Norfolk, Va., (Rixey & Rixey, Norfolk, Va., on brief), for appellee.

Before BOREMAN, BRYAN and J. SPENCER BELL,* Circuit Judges.

BOREMAN, Circuit Judge:

John T. Olah libeled the S. S. JALA-DURGA and her owner, the Scindia Steam Navigation Co., Ltd., for the injuries he sustained when the roller of a hatch cover passed over his fingers. Libelant alleged that the injury was caused by the negligence of the ship's crew. Scindia impleaded Olah's employer, Moon Engineering Co., Inc., a shipyard engineering company, alleging that Moon failed to perform its services in a workmanlike manner. The District Court for the Eastern District of Virginia, at Norfolk, dismissed the libel.[1]

---

* Judge Bell participated in the hearing and concurred in the disposition of the case but died before the Opinion was prepared.

1. 230 F.Supp. 161 (1964).

On appeal this court reversed, remanded the case for entry of a decree declaring shipowner's liability to Olah, for the ascertainment of damages and for any further proceedings the district court deemed necessary.[2] The district court entered judgment in favor of libelant in the amount of $17,500, which sum was paid by Scindia. Thereafter, the question of liability as between the shipowner and the impleaded respondent, Moon, was fully argued and submitted. The district court found that Moon had not rendered a substandard performance and dismissed the impleading petition with prejudice. The shipowner appeals, contending that the evidence shows that Moon's foreman, in charge of the repair gang, failed to supervise the work properly and failed to use precautions for the safety of Olah and his fellow employees. We affirm the judgment below.

The accident occurred while libelant was engaged in removing bolts from a deep tank top which was lying on the main deck of the ship, Olah being one of a three-man gang over which his father served as foreman. The tank top had been lifted out of No. 4 hold by the ship's crew with the aid of the ship's gear and lay about two feet from the edge of the hatch coaming at the spot where placed by the crew. The hatch cover had been closed earlier in the course of the work to prevent sparks from falling into the hold. Libelant worked in a crouched position with his head below the level of the coaming, facing the ship's bow. One of the repairmen was on the other side of the tank top, opposite Olah, and the third was in front of him applying a torch to the bolts. The senior Olah had his elbow on the hatch cover and was facing the stern.

The hatch cover moved on rollers and was opened by the draw of a winch located about fifty feet sternward of the hatch some ten feet above the deck and operated by the ship's crew. Since libelant was facing forward he could not see the winch operator. The hatch cover made virtually no sound when it was in motion. Libelant, however, was in the clear view of the winch operator as he set the winch in motion to open the hatch. The crew of the vessel were Hindus and, with two exceptions, spoke no English. Just before the winch was activated, the boatswain, or serang, issued a warning in Hindustani by calling out the word "cabadar," which meant "stand clear." No other alert was given to libelant or any member of his gang. He was about to rise from his crouched position, as he did from time to time, and he placed his hand on the coaming to steady himself. At this moment the cover began to move and the rollers passed over his fingers.

The only members of the vessel's crew who spoke English were DeSouza, the chief officer, who was not aboard at the time of the accident, and Katre, who was then in charge. DeSouza claims that he told the senior Olah, foreman, that the tank tops would have to be tested in their usual positions in the hold after they were repaired. Katre stated that he told the senior Olah that the hatch cover would be opened. Katre was standing very close to libelant at the time of the accident with full knowledge that the warning "cabadar" had been given. However, he stated that, in his opinion, libelant was not in a position of danger. The issue of contributory negligence has been resolved by this court which held there was no basis for the imputation of such negligence on the part of libelant.[3]

The senior Olah testified that he was not told the hatch cover was going to be moved at that time or any other time. While he did see men at the winch prior to the accident he thought it nothing unusual because men had been at the winch continuously.

The evidence is undisputed, and Katre admitted, that libelant had never been warned that the hatch was to be opened. It is also undisputed that the tank covers could not have been returned to the hold for testing on that day since the repairs were not completed, a fact of which the

2. 343 F.2d 457 (1965).

3. 343 F.2d 457, 459.

repairmen were aware. From this evidence the district court concluded that Katre did not say when the hatch would be opened and that the situation called for a more appropriate warning. The court concluded that if the warning in Hindustani were necessary, as held by this court, then Katre was obliged to issue a warning in English.

 In reviewing a judgment of a trial court, sitting without a jury in admiralty, the court of appeals may not set aside the judgment below unless it is clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 748 (1954).

In the instant case there was no evidence that the foreman or any member of the gang had been warned that the hatch cover was going to be opened *at that time.* Under these circumstances and considering the difficulties of communication between the ship's crew and Moon's employees, more was required than a warning in a language unintelligible to libelant, his foreman and his coworkers.

Smith v. Jugosalvenska Linijska Plovidea, 278 F.2d 176 (4 Cir. 1960), the only case cited by the shipowner, is clearly distinguishable from the case at bar. There the shipowner which was liable for an injury to a longshoreman sought indemnity from the stevedore. We held that the shipowner was entitled to indemnity because the stevedore's safety man had actual notice of a defective ladder. The safety man did not attempt to remedy the unseaworthy condition or warn anyone of its existence; instead he relied on the fact that three men had used the ladder without injury. We held that the safety man *"must not assume* that a safe condition exists when he has notice that such may not be the case; * * *."* 278 F.2d at 181.

The district court found that none of Moon's employees had knowledge, actual or constructive, that the hatch cover was going to be opened at that time. On the evidence there is no basis for a finding that Moon rendered a substandard performance. For the reasons stated the judgment below will be

Affirmed.